No. 74,112

In the Matter of the Care and Treatment of
KENNETH M. HAY, *Appellant.*
(953 P.2d 666)

Opinion filed January 30, 1998.

*Nancy Orrick*, of Olathe, argued the cause and was on the brief for appellant.

*W. Scott Toth*, assistant district attorney, argued the cause, and *James P. Muehlberger*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Kenneth M. Hay appeals from a jury finding that he is a sexually violent predator and from his involuntary civil confinement pursuant to the Kansas Sexually Violent Predator Act (the Act), K.S.A. 59-29a01 *et seq.*

Many of the 18 issues which are raised by this appeal have been decided by the United States Supreme Court decision in *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), which reversed our decision in *In re Care & Treatment of Hendricks*, 259 Kan. 246, 912 P.2d 129 (1996). Hay also raises issues that directly relate to the facts in this case, which we first set forth in some detail.

*Statement of facts*

Hay has been convicted of numerous sexual offenses. In October 1984, he pled no contest to a misdemeanor battery charge after he unsuccessfully attempted to rape his former wife, then masturbated and ejaculated on her back.

In July 1988, Hay pled guilty to the offense of harassment by telephone. This charge resulted from 20 to 30 sexually obscene phone calls made to various strangers. In March 1991, Hay was convicted after a jury trial of lewd and lascivious behavior. In February 1993, Hay pled guilty to five counts of aggravated indecent solicitation of a child, and the State dismissed four counts of lewd and lascivious behavior and three counts of aggravated indecent solicitation of a child. The underlying factual basis for the 1991 and 1993 charges involved Hay allegedly luring 6- to 12-year-old children, almost exclusively girls, toward his vehicle where he was masturbating.

The State's petition to involuntarily commit and treat Hay under the Act was filed on February 23, 1995. The probable cause hearing was held on February 28, 1995, in which Hay's motion for dismissal was taken under advisement with leave for written briefs to be filed.

At the hearing, the State presented the testimony of a psychologist, Robert Huerter, from the Larned State Security Hospital. Huerter testified Hay had been diagnosed with pedophilia, opposite sex, nonexclusive type and personality disorder not otherwise

specified. Huerter found it clinically significant that Hay had demonstrated progression in his acts and had multiple victims and that many of his victims were strangers. Huerter believed that Hay posed a danger to others, especially young girls.

The court found probable cause to believe Hay was a sexually violent predator and ordered his evaluation at Larned State Security Hospital. Prior to a trial scheduled within the 45-day time limitation set by the statute, the court held two hearings regarding discovery issues. The court denied Hay's motion to dismiss on March 28, 1995.

The trial commenced on April 3, 1995, and the State presented the testimony of numerous victims of the various crimes, including one girl who stated that Hay had given her a bath and rubbed her private parts. The most damaging evidence presented by the State was that of Mark Dowling, another convicted sex offender, who, over Hay's vigorous objections, testified he had communicated with Hay on numerous occasions and claimed they had formulated a plan for committing further sex offenses upon their release from prison.

Dowling testified that he and Hay had discussed a plan to abduct a young girl, hold her in some isolated area, and subject her into becoming a sex slave through psychological and sexual conditioning. Although Dowling testified directly as to this plan, a letter he had written to Hay, which had been accidentally intercepted by the district attorney's office, was admitted into evidence. This letter was graphic in detail and showed Hay's sexual violations could be expected to escalate. Although Hay's counsel did a competent job in attempting to discredit Dowling, Dowling's testimony, if given credence by the jury, was sufficient by itself to justify the ultimate verdict which it reached in this case.

The State also presented the testimony of two expert witnesses, Dr. Charles Befort, a psychologist at Larned State Security Hospital, and Michael Boniello, a clinical social worker. Dr. Befort testified that he had evaluated Hay for several days in March 1995. He diagnosed Hay as a pedophile. Befort stated Hay had told him his current masturbation fantasies involve "little girls." It was significant to Befort that Hay's acts had become chronic, as they had

occurred over a decade, and were progressive. Dr. Befort concluded that Hay was at a high risk to reoffend.

Boniello testified regarding the Sexual Offender's Treatment Program at the Lansing Correctional Facility. He testified that sexual abuse of children by adults results in emotional abuse to the child, regardless of whether the child is physically hurt. He also testified regarding progression and serialization of sex offenders. Boniello stated it would be very significant if a sex offender was found to be communicating with another sex offender.

Hay presented the testimony of Gary Heitman, a counselor at the Lansing Sexual Offender's Treatment Program, who had treated Hay. Heitman admitted Hay had some issues left to address at the completion of the program, but claimed he would not have certified Hay's completion of the program if he had not seen some advancement. Heitman stated that the great majority of prisoners who receive treatment in the program do not reoffend.

Hay also presented the testimony of Dr. William Logan and Dr. John Wisner, both forensic psychiatrists. Dr. Logan essentially testified that most pedophiles do not reoffend and that he had noticed improvement in Hay's condition. He estimated Hay's chances of reoffending at about 20% and denied that Hay's offenses displayed progression. Dr. Wisner testified there was no evidence that the viewing of adults engaging in sexual acts produces harm in a child. Dr. Wisner did not consider the acts Hay had engaged in to be violent or that Hay was at risk to progress.

At the conclusion of the evidence and following instructions, the jury determined Hay was a sexually violent predator. Hay's appeal was transferred to us on our own motion pursuant to K.S.A. 20-3018(c) and held pending the appeal in the *Hendricks* case.

*Constitutional challenges to the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq.*

Hay has raised the following issues pertaining to the constitutionality of the Sexually Violent Predator Act: (1) The Act is criminal in nature; (2) the Act violates the prohibition against double jeopardy; (3) the Act violates the prohibition on ex post facto laws; (4) the Act violates substantive due process; (5) the Act violates

procedural due process; (6) the Act violates guarantees of equal protection; (7) the Act is overly broad and vague; (8) the filing of the petition under the Act violated the 1993 plea agreement between the State and Hay; and (9) a commitment pursuant to the Act constitutes cruel and unusual punishment.

We will not attempt here to comment or ruminate on the United States Supreme Court opinion in *Hendricks*, but only to set forth how the majority opinion governs the issues Hay raises. To the extent analysis is necessary or helpful, we have been aided by McAllister, *"Punishing" Sex Offenders*, 46 Kan. L. Rev. 27 (1997).

*Hendricks* explicitly governs as to the first four of Hay's contentions. The Court unanimously rejected the substantive due process challenges to the Act. 138 L. Ed. 2d at 511-14. Justice Breyer's dissent began: "I agree with the majority that the Kansas Act's 'definition of "mental abnormality"' satisfies the 'substantive' requirements of the Due Process Clause." 138 L. Ed. 2d at 522. This disposes of the substantive due process issue raised by Hay.

As to Hay's first contention that the Act is criminal in nature, a majority of the Court stated: "We therefore hold that the Act does not establish criminal proceedings and that involuntary confinement pursuant to the Act is not punitive. Our conclusion that the Act is nonpunitive thus removes an essential prerequisite for both Hendricks' double jeopardy and *ex post facto* claims." 138 L. Ed. 2d at 519.

The *Hendricks* majority opinion relied in part on its earlier cases of *Allen v. Illinois*, 478 U.S. 364, 366, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986) (Illinois statute permitting commitment of "mentally ill" and dangerous individual), and *Minnesota v. Probate Court*, 309 U.S. 270, 271-72, 84 L. Ed. 744, 60 S. Ct. 523 (1940) (Minnesota statute permitting commitment of dangerous individual with "psychopathic personality"), in noting:

"We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' . . . The Kansas Act is plainly of a kind with these other civil commitment statutes: . . . . The precommitment requirement of a 'mental abnormality' or 'personality disorder' is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible

for confinement to those who are unable to control their dangerousness." 138 L. Ed. 2d at 512-13.

With this recognition that the statute is, as it specifically states, "a civil commitment procedure for the long-term care and treatment of the sexually violent predator," K.S.A. 59-29a01, the civil nature of the proceedings is clearly established.

We will not comment on either the *Hendricks'* majority or minority opinions' concern with the "treatment" aspect of the Act, for there was no evidence in the record when the case was first presented to us as to Hay's treatment other than his commitment to the Kansas Department of Social and Rehabilitation Services to be housed in a totally separate and segregated unit from the general prison population. The Act has been deemed a civil commitment which is not criminal in nature. Due to this significant holding, the foundation for Hay's constitutional challenges has been shattered; therefore the remainder of his arguments must clearly fall.

As to the double jeopardy issue, the *Hendricks* Court held: "Because we have determined that the Kansas Act is civil in nature, initiation of its commitment proceedings does not constitute a second prosecution." 138 L. Ed. 2d at 519-20. Hendricks also argued that even if the Act survived the "multiple prosecution" test, it failed the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932). The Court replied:

"Under *Blockburger*, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' [Citation omitted.] The *Blockburger* test, however, simply does not apply outside of the successive prosecution context. A proceeding under the Act does not define an 'offense,' the elements of which can be compared to the elements of an offense for which the person may previously have been convicted. Nor does the Act make the commission of a specified 'offense' the basis for invoking the commitment proceedings. Instead, it uses a prior conviction (or previously charged conduct) for evidentiary purposes to determine whether a person suffers from a 'mental abnormally' or 'personality disorder' and also poses a threat to the public. Accordingly, we are unpersuaded by Hendricks' novel application of the *Blockburger* test and conclude that the Act does not violate the Double Jeopardy Clause." 138 L. Ed. 2d at 520.

Hendricks' ex post facto contention was quickly discounted because

"the Act does not impose punishment; thus, its application does not raise ex post facto concerns. Moreover, the Act clearly does not have retroactive effect. . . . Because the Act does not criminalize conduct legal before its enactment, nor deprive Hendricks of any defense that was available to him at the time of his crimes, the Act does not violate the Ex Post Facto Clause." 138 L. Ed. 2d at 520-21.

Although the remaining issues raised by Hay were not directly ruled upon by the United States Supreme Court in *Hendricks*, each is without sufficient justification to require or allow us to strike down the Act on the basis of unconstitutionality. We commence our limited analysis of these remaining issues by remembering our longstanding and well-established rules that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and that before a statute may be struck down, it must clearly appear that the statute violates the Constitution. *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 230, 689 P.2d 860 (1984).

The fundamental requirement of due process is a fair trial in a fair tribunal. *State v. Green*, 245 Kan. 398, 404, 781 P.2d 678 (1989). To the same result, in *Crane v. Mitchell County U.S.D. 273*, 232 Kan. 51, Syl. ¶ 1, 652 P.2d 205 (1982), we said: "The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case."

These requirements are clearly satisfied by this Act, which provides for all necessary basic protections, including appointed counsel, a probable cause hearing, appointment of qualified experts for examinations, a jury trial requiring a unanimous decision, appeals, annual examinations, discharge petitions, hearings, and the strictest possible burden of proof on the State.

The lengthy descriptions of the Act in the *In re Care & Treatment of Hendricks*, 259 Kan. at 267-69, and the *Hendricks*, 138 L. Ed. 2d at 508-10 opinions suggest the procedures for civil commitment under the Act are adequate to ensure that procedural due process is satisfied. Any assertion that a person found to be a sexual predator under the Act is limited to one attempt to seek release is

without merit, and the right to receive additional evaluations continues after the trial. The obligations of procedural due process are clearly satisfied by the Act.

Although equal protection of the law is guaranteed by the Fourteenth Amendment to the United States Constitution and §§ 1 and 2 of the Bill of Rights of the Kansas Constitution, our decision on Hay's equal protection contention is foretold by the result of the substantive due process issue. The difference between due process and equal protection was established in *Peterson v. Garvey Elevators, Inc.*, 252 Kan. 976, Syl. ¶ 1, 850 P.2d 893 (1993), where we explained:

"The difference between the constitutional concepts of due process and equal protection is that due process emphasizes fairness between the state and the individual dealing with the state, regardless of how other individuals in the same situation are treated, while equal protection emphasizes disparity in treatment by the state between classes of individuals whose situations arguably are indistinguishable."

Nevertheless, the tests for determining the constitutionality of a statute under due process and equal protection grounds weigh almost identical factors. *Clements v. United States Fidelity & Guaranty Co.*, 243 Kan. 124, 127, 753 P.2d 1274 (1988). We make this constitutional analysis subject to a strict scrutiny standard, see *Farley v. Engelken*, 241 Kan. 663, 669, 740 P.2d 1058 (1987), with the burden placed on the State to show the required State interest for the action.

There is no doubt that the civil commitment of sexually violent predators involves so significant a deprivation of liberty that the protections of due process and equal protection are involved. However, in its finding that the Act did not violate substantive due process, the Court in *Hendricks* made the following statements which may likewise be applied to this equal protection issue:

"The Court has recognized that an individual's constitutionally protected interest in avoiding physical restraint may be overridden even in the civil context:

'[T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On

any other basis organized society could not exist with safety to its members.' *Jacobson v. Massachusetts*, 197 U.S. 11, 26, 49 L. Ed. 643, 25 S. Ct. 358 (1905).

Accordingly, States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. [Citations omitted.]" 138 L. Ed. 2d at 512.

We hold that Hay's contention that similarly situated people are not treated similarly under the Act is without merit. All members of the class of persons of which Hay is a part are subject to treatment identical to that which he has received, and there exist clear distinctions between this class and other classes which are not similarly treated.

The legislature has broad constitutional authority to adopt statutory programs to confine and treat people who might be dangerous to themselves or others and who suffer from some mental ailment, whether a mental abnormality, a personality disorder, or a mental illness as statutorily defined. The legislature, however, is under no duty to act to the fullest extent of its authority.

The Act focuses on the narrow problem of mental abnormality and violent predatory sex crimes. The legislative history shows the target group was a small number of habitual sex offenders, who, because of their psychological makeup, pose an immediate danger to the public.

Equal protection of the law does not require the State to choose between attacking every aspect of public danger or not attacking any part of the danger at all. As we said in *Manzanares v. Bell*, 214 Kan. 589, 615, 522 P.2d 1291 (1974): " '[T]he legislative authority . . . is not bound to extend its regulations to all cases which it might possibly reach. The legislature "is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be the clearest." ' " The Act does not violate equal protection principles for the same reason it does not violate substantive due process—it is narrowly tailored to deal with a compelling State interest.

Nor is the Act overly broad or vague. We are duty bound to avoid a vague construction of the Act as. is reasonably possible. *Boatright v. Kansas Racing Comm'n*, 251 Kan 240, Syl. ¶ 1, 834

P.2d 368 (1992). All of the provisions of the Act were summarized in both *Hendricks,* 138 L. Ed. 2d at 508-10, and *In re Care & Treatment of Hendricks,* 259 Kan. at 267-69, which clearly indicate the Act is comprehensive, understandable, capable of application, and sufficiently clear and definite to withstand a challenge of vagueness and overbreadth.

. Hay's claim that the filing of the commitment petition in this case violated his plea agreement is likewise without merit. Hay's argument is unpersuasive for several reasons.

Hay's involuntary commitment is grounded solely on his mental ailment and present dangerousness. His earlier convictions were not the basis for his commitment and served only to identify him as a member of the pool of people potentially subject to the Act. Hay's present confinement is not punishment for any offense, but merely civil commitment based on his mental condition.

Civil commitment following the service of a sentence is collateral to a plea and independent of the criminal case. See *George v. Black,* 732 F.2d 108, 110-11 (8th Cir. 1984). In addition, the plea agreement is immaterial as far as proceedings under the Act are concerned.

Last, there exists no basis for Hay's argument that the Act violates the prohibition against cruel and unusual punishment where commitment proceedings under the Act have been clearly held to be civil in nature, not criminal or punitive. This issue is without merit and requires no further comment.

With these nine constitutional issues resolved, we turn to issues pertaining to pretrial and trial matters, none of which compel reversal.

## Probable cause

Hay first alleges the trial court erred in its initial finding of probable cause. The probable cause determination in a sexual predator case must be compared to that of a criminal trial and requires evidence sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the accused is a sexually violent predator. See *State v. Butler,* 257 Kan.

1043, 1059, 897 P.2d 1077 (1995); *State v. Chapman*, 252 Kan. 606, 620, 847 P.2d 1247 (1993).

Hay makes a scattergun argument of innumerable violations, including insufficient petition, improper foundation of an expert opinion, infringement of the physician-patient privilege, and the taking of judicial notice of court files, then finally contends the only real question was "SHOULD A FLASHER BE LOCKED UP FOREVER?" None of these contentions are buttressed by any legal arguments. They also are in violation of Supreme Court Rule 6.02(d) (1997 Kan. Ct. R. Annot. 33), as they are made without being keyed to the record on appeal and are, therefore, presumed to be without support in the record. The Minnesota cases Hay cites are not applicable to the factual basis of this case or to Kansas law.

The State presented evidence at the probable cause hearing that Hay was a sexually violent predator, pursuant to K.S.A. 59-29a02(a), and Hay has failed to show that any error at the probable cause hearing prejudiced him at trial. Because of this, a rule applicable in criminal proceedings is relevant here: "[W]here an accused has gone to trial and been found guilty beyond a reasonable doubt, any error at the preliminary hearing stage is harmless unless it appears that the error caused prejudice at trial." *Butler*, 257 Kan. at 1062. In a sexually violent predator proceeding, where respondent has gone to trial and been found to be a sexually violent predator beyond a reasonable doubt, any error at the probable cause hearing stage is harmless unless it appears that the error caused prejudice at trial. This issue is without merit.

*Dismissal and post-trial motions*

All of these motions were based on the constitutional arguments previously disposed of or the following arguments, and this issue need not be further addressed except as it bears on the standard of review applied to each of the trial issues. The trial court properly ruled on all motions presented.

*Required findings of fact and conclusions of law*

Hay contends the trial court's brief statement at the hearing declaring the Act to be constitutional fails to comply with Supreme

Court Rule 165 (1997 Kan. Ct. R. Annot. 180) and K.S.A. 60-252. This statute provides in part: "In all actions tried upon the facts without a jury or an advisory jury or upon entering summary judgment or involuntary dismissal, the judge shall find, and either orally or in writing state, the controlling facts."

We doubt this provision is even applicable to this case as the ultimate decision here was made by a jury. Additionally, the trial court's finding that the Act was civil in nature was the controlling basis for the conclusion that the Act was not unconstitutional. The decision may have been somewhat cursory, but this was clearly understandable in light of the brief time frame under which all parties were operating in order to try this case within the statutory time limitation.

Finally, although K.S.A. 60-252 does state that "[r]equests for findings are not necessary," we have held that in the absence of an objection at the trial court level to the failure to make findings, the trial judge is presumed to have made necessary findings, and this precludes appellate review of this issue. *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 368-69, 598 P.2d 188 (1979). As no such objection has been found in the record submitted to us, Hay is precluded from now raising this issue.

For any or all of these reasons, this issue is without merit.

*Evidence of uncharged conduct*

Our standard of review regarding the admission or exclusion of evidence, subject to exclusionary rules, is that of abuse of the trial court's discretion. *State v Baacke*, 261 Kan. 422, 427, 932 P.2d 396 (1997). A court may only be said to have abused its discretion when its actions are arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the view of the trial court.

Hay alleges evidence of specific conduct was inadmissible pursuant to K.S.A. 60-455, was not relevant, and was used solely to inflame the jury.

In order to establish that Hay was a sexually violent predator, the State was required to show he had been convicted of or charged with a sexually violent offense and suffers from a mental abnormality or personality disorder which makes him likely to engage in

predatory acts of sexual violence. The evidence Hay challenges was clearly relevant to prove he suffers from the condition of pedophilia and that he is likely to engage in predatory acts of sexual violence in the future. We are hard-pressed to see how such evidence can be prohibited by K.S.A. 60-455 when it is an essential element of the required proof and necessary for the decision-making process of the jury.

Our ultimate conclusion is that K.S.A. 60-455 was not violated by the evidence admitted in this case because the prior acts were either a necessary element of the charged conduct or relevant evidence which, while obviously prejudicial to Hay's position, is probative of the ultimate issue the jury is required to determine. Hay contends the evidence presented is in direct violation of the provisions of K.S.A. 60-455, which reads as follows:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

This provision was intended to prohibit usage of a previous crime in another trial to infer the disposition to commit the crime currently being charged:

"This states the generally accepted rule rejecting evidence of another crime or civil wrong as proof that a person committed a crime or civil wrong on a specified occasion. The limitation is directed against the idea that when it is shown that a person committed a crime on a former occasion there arises an inference that that person has a disposition to commit crime and therefore committed the crime now charged. The exceptions to the exclusionary rule where the evidence is relevant to some element of the case are stated." 1 Gard's Kansas C. Civ. Proc. 3d Annot. § 60-455 (1997).

We have held in several instances that where evidence of the nature prohibited by K.S.A. 60-455 is independently admissible, it may properly be received. See *State v. Crossman*, 229 Kan. 384, 387-88, 624 P.2d 461 (1981); *State v. Martin*, 208 Kan. 950, 952, 495 P.2d 89 (1972).

The critical issues in a sexual predator case make the evidence of prior conduct, charged or uncharged, material evidence in the case. We hold the prohibitions of K.S.A. 60-455 are not applicable or governing in a case of this nature.

Although a similar statute was not involved, the same result was obtained in the Washington sexual predator case of *Personal Restraint of Young*, 122 Wash. 2d 1, 857 P.2d 989 (1993), where testimony by the victims of prior crimes was expressly allowed. The court specifically declared: "In assessing whether an individual is a sexually violent predator, prior sexual history is highly probative of his or her propensity for future violence." 122 Wash. 2d at 53.

### Dowling's testimony and letter regarding post-release plans

This issue is also subject to an abuse of discretion standard of review.

Hay makes a highly indignant argument that Dowling's testimony and the letter he wrote to Hay were irrelevant, had no probative value, inflamed the jury, and trampled on his due process rights.

We have not set forth Dowling's testimony in all its lurid detail and need not preserve in print the disgusting nature of the letter, but it is sufficient to say this evidence was exceedingly damaging to Hay and totally counteracted his contention that he was "merely a flasher." It was strong proof that his actions could be expected to escalate and place young girls at risk wherever Hay might be located.

Dowling's testimony, although subject to a credibility attack and a showing that he was possibly protecting himself from damaging evidence if sexual predator proceedings are commenced against him, clearly demonstrated he and Hay had been formulating a plan to commit additional and more violent sexual acts in the future. The plan was manifestly described in Dowling's testimony, which provided a sufficient evidentiary foundation for the admission of the letter.

The existence of the plan was highly relevant and, like all "dynamite" evidence in any case, *was* prejudicial in that it proved the likelihood that Hay would commit acts of sexual violence in the

future and that he did in fact suffer from a mental abnormality or personality disorder. This type of prejudice, however, does not bar the admission of such evidence, which was all clearly admissible.

Additionally, as we have previously stated, K.S.A. 60-455 is also not applicable to this evidence, despite Hay's contention that the statute bars its introduction.

Once a sufficient foundation was laid, which it clearly was, Dowling's credibility and the truth of the alleged conspiracy plainly fell within the province of the jury to determine and decide. Dowling's testimony and the letter were properly admitted. The trial court did not abuse its discretion in doing so.

*Discovery*

We have always held that a trial court is vested with broad discretion in supervising the course and scope of discovery. *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, Syl. ¶ 5, 915 P.2d 86 (1996).

In the present case, the parties and the court were severely pressed to bring this case to trial within the 45-day time limitation specified in the Act. Hay now claims that he was prejudiced by the State's inadequate responses to his discovery requests and failure to supply final witness lists, in violation of the court's discovery orders. Hay fails to point out that he made a voluminous discovery request on March 17, 1995, which the State was ordered to comply with to the best of its ability within 1 week so that the trial could proceed on April 3, 1995. In making this ruling, the court stated:

"I'm sorry about this. But the legislature didn't allow enough time to try one of these cases. But they said 45 days. . . .

"It's faster than I want to try it and I feel sorry for both of you to try to prepare the case. But I'm not sure there is much to be gained by arguing about who has the more substantial burden. It's a substantial burden on both sides.

"I do think, this is a civil proceeding, it's appropriate to submit a witness and exhibit list as soon as possible and I will order both sides to do that by March 24th. It's not my order, however, that be an exclusive list, although I may have to push you to an exclusive list sometime the following week. I might want to leave open the possibility that somebody could add a witness or exhibit at least in the following week. But I will order that you furnish witnesses and addresses and identify exhibits known to you and anticipated to be used at trial by March 24th."

Prior to trial, Hay complained to the trial court about the late endorsement of witnesses and the failure to provide their addresses or phone numbers. The State explained its reasons for the delay, which the trial court accepted as reasonable. After making some orders insuring that Hay would get access to the proposed witnesses, the judge ruled, "But under all the circumstances I think furnishing that information on the 31st was in compliance with my order and these folks ought not be excluded on that basis."

In light of the fact that the court specifically ordered the State to provide Hay access to the witnesses, it does not appear from a reading of the record that the State's explanation for the delay was unreasonable or that the court abused its discretion in deciding to allow the State to present these witnesses. See *State v. Coleman,* 253 Kan. 335, 349, 856 P.2d 121 (1993) ("trial courts consistently permit the late endorsement of State witnesses [and we generally uphold those decisions].").

Furthermore, Hay does not mention that the court did prevent the State from presenting the testimony of another witness discovered on the second day of trial. He also fails to discuss the fact that his expert witnesses refused to talk to the State and that no report was given to the State regarding their opinions until the second day of trial. This explains the trial court's decision to allow the State to endorse an additional expert on the third day of trial. We hold the record clearly shows that the trial court, under pressure from the 45-day time limitation, fairly ruled upon discovery matters and did not abuse its discretion.

*Self-incrimination*

Hay next alleges his Fifth Amendment rights were violated when he was required to submit to a psychological evaluation. However, when the United States Supreme Court's opinion in *Hendricks* held the Act was civil in nature, not criminal or punitive, this issue was effectively decided. *Hendricks* relied in principal part on *Allen v. Illinois,* 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986), which addressed this exact issue. See *Hendricks,* 138 L. Ed. 2d at 514-19.

Allen had argued to the Court that because a proceeding pursuant to the Illinois Sexually Dangerous Persons Act was criminal in nature, the Fifth Amendment right to remain silent entitled him to refuse to answer all questions posed by psychiatrists. Pointing out that the decision to provide certain safeguards applicable in criminal trials does not itself transform a commitment proceeding into a criminal prosecution requiring the full panoply of rights, the Court stated:

"Although the fact that incarceration may result is relevant to the question whether the privilege against self-incrimination applies, *Addington [v. Texas*, 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979),] demonstrates that involuntary commitment does not itself trigger the entire range of criminal procedural protections. Indeed, petitioner apparently concedes that traditional civil commitment does not require application of the privilege." 478 U.S. at 372.

All of the cases cited by Hay are premised on a finding that the commitment proceedings are criminal in nature, and when that premise falls, all of his arguments on this issue must fall as well. He completely fails to recognize or address *Allen*, a case directly on point, which is binding authority on us as to this issue.

Hay's Fifth Amendment protections were not violated by the Act.

*Jury instructions*

Hay contends on appeal that the jury instructions were "improper, confusing, vague and ambiguous." These conclusory contentions, however, are not buttressed by any explicit references to the specific objections made at the trial court level, nor has Hay argued or shown to us which of the instructions are in error or how they prejudiced him.

In determining claims that a jury has been so inadequately or improperly instructed so as to require reversal and the grant of a new trial, we apply the general statements set forth in *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 12, 899 P.2d 1013 (1995) (quoting *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 353, 837 P.2d 330 [1992]):

" 'It is the duty of the trial court to properly instruct the jury upon a party's theory of the case. Errors regarding jury instructions will not demand reversal

unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal.' "

While we cannot say that specific objections were not raised before the trial court, the appropriateness or reasons for these objections is not argued or shown to us on appeal, and we are left with the general statement that they were improper. Such is not sufficient for us to make any meaningful review.

The instructions as given accurately and fairly instructed the jury. They are substantially correct and did not mislead the jury. To the extent we are able to consider this inadequately raised issue, it has absolutely no merit.

## Sufficiency of the evidence

As the State's burden under the Act is proof beyond a reasonable doubt, our standard of review when the sufficiency of the evidence is challenged is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a reasonable factfinder could have found the defendant to be a sexually violent predator beyond a reasonable doubt. This is substantially the same standard applied in a criminal case. See *State v. Orr*, 262 Kan. 312, 344, 940 P.2d 42 (1997).

The testimony of the numerous victims, the testimony of the State's experts, and the testimony of Mark Dowling all clearly support the jury's verdict. We are convinced a reasonable factfinder could have found Hay to be a sexually violent predator beyond a reasonable doubt.

Affirmed.