NOT DESIGNATED FOR PUBLICATION

Nos. 112,904
112,905
112,906
112,907

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.W.C. and K.D.C.,
Minor Children Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Ottawa District Court; JEROME P. HELLMER, judge. Opinion filed October 16, 2015.
Affirmed.

*Jennifer A. Wagle*, of Cleary, Wagle & West, of Wichita, for appellant.

*Jason C. Parks*, county attorney, for appellee.

*Robert S. Jones* and *C. Charles Ault-Duell*, of Norton, Wasserman, Jones & Kelly, L.L.C., of
Salina, for maternal grandparents.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam:* The district court of Ottawa County decided two boys, who were
staying with their maternal grandparents, were children in need of care, removed them
from their father's care, and placed them with their grandparents. In this consolidated
appeal of the two cases, K.C., the father, attacks various aspects of the court's temporary
orders as well as its final determination that the boys were in need of care. (Mother is
deceased.) We focus on the final orders of the court, as the temporary orders Father
complains about are moot. The evidence in the record supports the court's decision and
we affirm.

1

*After their mother's death, the grandparents initiated private custody proceedings.*

K.C. is the father of K.W.C. and K.D.C., minor children born in 2006 and 2007 respectively. Their mother died in January 2013. A private CINC case filed by the maternal grandparents followed in Ottawa County, in which the same district magistrate judge presiding over these cases granted custody of the children to Father subject to a parenting time schedule for the maternal grandparents.

In May 2014, Father asked his current spouse to tell the maternal grandparents that he had been "called out of town" and ask if the grandparents could take the boys early for their scheduled visit. After the children arrived, the grandparents were told that Father had requested they take the children early because he was in jail on a felony firearm charge and had a pending probation revocation proceeding in North Dakota.

They were also told that the children had been subject to abuse by Father and that he was unable to care for the children. The maternal grandparents moved to extend their parenting time and reopen the 2013 Ottawa County CINC cases. This led to Father agreeing to extend his children's time with their grandparents until June 21, 2014.

Then, in June 2014, the State filed two CINC petitions concerning the boys. Citing K.S.A. 2014 Supp. 38-2242, the State obtained ex parte orders of protective custody for the children. The district court found probable cause existed to grant the petitions, citing Father's pending felony charges, pending probation revocation in North Dakota, plans to leave the state with the children, and his failure to provide for the health and care of the children. The district court removed the children from Father's custody, placed them in the protective custody of the maternal grandparents for 72 hours, and set the matter for hearing.

2

On June 23, 2014, the district court conducted the first of two temporary custody hearings. The maternal grandparents, their attorney, and the Ottawa County Attorney appeared at the hearing. The guardian ad litem and Father were not present, but Father's attorney appeared by telephone. Father also filed a motion to dismiss, a motion to reassign the case from the district magistrate judge to a district judge, and a motion seeking a continuance of the temporary custody hearing.

The judge declined to extend the 72-hour statutory deadline for a temporary custody hearing under K.S.A. 2014 Supp. 38-2243(b). However, the judge granted Father a rehearing of the temporary custody hearing and set the matter for a rehearing 3 days later. The district magistrate judge also notified the parties that Father's three motions would be heard on July 8, 2014.

The court then found probable cause existed under K.S.A. 2014 Supp. 38-2243 to believe that (1) an emergency existed threatening the safety of the children; (2) the children would sustain harm contrary to their welfare if returned to Father; (3) immediately placing the children in the temporary custody of the maternal grandparents was in their best interests; (4) the children were not likely to be available within the jurisdiction of the district court for future proceedings; and (5) the children's health or welfare may be endangered by the removal of the children from their home state.

The second temporary custody hearing took place on June 27, 2014. Father and the maternal grandparents, their attorneys, the guardian ad litem, and the Ottawa County Attorney all appeared. At the conclusion of the rehearing, the judge once again found that probable cause existed under K.S.A. 2014 Supp. 38-2243 to meet the standards for removal of the children from Father's custody. The district magistrate judge, in accordance with K.S.A. 2014 Supp. 38-2243, continued placement of the children in the temporary custody of the maternal grandparents pending a formal CINC hearing scheduled before August 18, 2014.

3

The court tried the CINC petitions on August 8, 2014, and after an intervening continuance and 3 days of hearings, concluded the matter on October 13, 2014.

At the hearings, the State presented testimony of Vanessa Acton, who had a relationship with Father from October 2013 until January 2014. Then, Nicole Zuspann testified. She was employed as a nanny and bookkeeper for Father. She also had a relationship with him from February 2014 until May 2014. After that, the court heard from Carmela Surbeck, who began a relationship with Father in April 2014. Then Ruston Herbst, who was employed by Father from March 2014 until May 2014, testified.

The maternal grandparents called three witnesses. Leigh Ann O'Halloran, a clinical social worker, who began treatment with the children in July 2014 and had seen them 11 times, testified. Then, Jenna Krehbiel, a mental health counselor, testified. As part of the earlier 2013 CINC case, she had 10 sessions with the children from January 2013 until May 2013. Justin Rugg, the Sheriff of Barber County, also testified.

Father called three witnesses: Kim Clark, his former wife; Melissa Stroh, a physician's assistant who examined the children in March 2014; and Marcia Cantrell, the principal at the boys' school in Kiowa, Kansas.

The district court decided both children were children in need of care as defined in K.S.A. 2014 Supp. 38-2202(d)(1),(2), and (3) and ordered them to remain in the custody of the maternal grandparents pending review of the dispositional plans to be submitted by the parties.

Prior to disposition, Father timely appealed the orders of temporary custody and the district judge's order denying his motion to dismiss due to improper venue.

The court decided that custody of the boys would remain with the maternal grandparents pending Father's efforts towards meeting the terms and conditions set forth for reintegration with the children.

Father has launched a broad attack on the handling of these two cases. We will first examine the issues about venue. After that, we move on to Father's complaints about the temporary orders, the district court's denial of his request for a continuance, and the temporary custody hearing itself. Then, we will delve into the court's conclusions that these two boys are children in need of care as defined by law.

*Venue was proper in Ottawa County.*

The Revised Code places venue "in the county of the child's residence or in the county where the child is found." K.S.A. 2014 Supp. 38-2204(a). Naturally, the interpretation and application of a statute is a question of law over which an appellate court has unlimited review. See *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

The district court noted that at the time of the filing of the CINC petitions the children were physically present in Ottawa County with the Father's "knowledge and consent," and that the information necessary for the petition was "gleaned" in Ottawa County. Substantial competent evidence in the record supports the court's finding.

Father cites a case that is not applicable here. In the case, *In re H.D.W.*, No. 90,193, 2004 WL 292112 (Kan. App. 2004) (unpublished opinion), a panel of this court found that the grandparents' use of deception to take the children to Elk County from Saline County to establish venue in Elk County was improper, particularly given that the grandparents' attorney, not the Elk County Attorney, acted as lead counsel throughout the CINC proceedings and on appeal. 2004 WL 292112, at * 1, 3.

5

In contrast, the record indicates that when the Ottawa County Attorney filed the CINC petition, the children were in Ottawa County with their maternal grandparents at Father's request. In May 2014, Father had Clark contact the maternal grandparents to request they take the children early for their scheduled summer visitation as set out in the 2013 CINC cases. Once the children arrived for their visit and the maternal grandparents learned of the reasons behind the request—Father's incarceration and pending felony charges—they filed a motion to extend their parenting time and reopen the prior 2013 Ottawa County CINC cases. This subsequently led Father to agree to an order extending his children's visitation with their maternal grandparents until June 21, 2014. Father even concedes in his brief that the children were "purposefully" in Ottawa County. Moreover, the Ottawa County Attorney has clearly been the lead counsel throughout the entire CINC proceedings and on appeal, not the maternal grandparents' attorney. These facts are clearly distinguishable from *In re H.D.W.*

Father's contention that the venue should have been changed to Barber County, where he used to live, is not compelling. We treat this as a matter of discretion for the court. We begin with the statute that deals with changes of venue in these types of proceedings:

"Upon application of any party or interested party and after notice to all other parties and interested parties, the court in which the petition was originally filed alleging that a child is a child in need of care may order the proceedings transferred to the court of the county where: (1) The child is physically present; (2) the parent or parents reside; or (3) other proceedings are pending in this state concerning custody of the child. The judge of the court in which the case is pending shall consult with the judge of the proposed receiving court prior to transfer of the case. If the judges do not agree that the case should be transferred or if a hearing is requested, a hearing shall be held on the desirability of the transfer, with notice to parties or interested parties, the secretary and the proposed receiving court. If the judge of the transferring court orders the case transferred, the order of transfer shall include findings stating why the case is being transferred and, if available, the names and addresses of all interested parties to whom the receiving court

6

should provide notice of any further proceedings. The receiving court shall accept the case. Upon a judge ordering a transfer of venue, the clerk shall transmit the contents of the official file and a complete copy of the social file to the court to which venue is transferred, and, upon receipt of the record, the receiving court shall assume jurisdiction as if the proceedings were originally filed in that court. The transferring judge, if an adjudicatory hearing has been held, shall also transmit recommendations as to disposition. The court may return the case to the court where it originated if the child is not present in the receiving county or, the receiving county is not the residence of the child's parent or parents." K.S.A. 2014 Supp. 38-2204(b).

The only discernible complaint by Father on appeal regarding the issue of whether transfer of venue to Barber County was appropriate is his conclusory statement that the district court denied the request for transfer "without following the unique procedures set forth by [K.S.A. 2014 Supp. 38-2204(b)]." However, other than citing to the statute, Father does not identify which alleged procedures under K.S.A. 2014 Supp. 38-2204(b) the district court failed to follow. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

While the district court did not specifically make any findings or conclusions on the record regarding Father's request for a transfer to Barber County, we note that he did not object to the district court's findings of fact or conclusions of law on the issue of transferring venue. Thus, we can presume the district court found all the facts necessary to support its judgment. The record supports such a presumption and does not preclude meaningful review. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Before ruling on whether venue was appropriate in Ottawa County, the district court questioned why venue should be in Barber County when the evidence indicated that Father was now living in Parsons, Labette County. His attorney conceded that Father had

7

moved the family home, a fifth-wheel trailer, to Parsons. Father does not address this concession to us. Nor does he attempt to challenge or make any argument with regard to the State's contention on appeal that the district court found the change of venue improper because the record indicates Father no longer lives in Barber County and currently resides in Parsons. In fact, the record indicates that Father has yet to comply with the condition in the disposition order seeking clarification as to the physical location of his residence.

The children were physically present in Ottawa County. It was unclear in which county Father was living, and there were no other pending proceedings concerning the children other than the Ottawa County District Court's continuing jurisdiction regarding visitation in the earlier 2013 CINC cases. Clearly, there did not appear to be any applicable county under K.S.A. 2014 Supp. 38-2204(b) to transfer venue. In light of the ample evidence to support the district court's findings that venue was proper in Ottawa County, there is no support for finding the district court abused its discretion by not transferring venue to Barber County in the midst of the CINC proceedings.

*Temporary orders are temporary.*

Next, Father complains that the district court abused its discretion by issuing the June 19, 2014, ex parte orders removing the children from his custody and placing them in protective custody with the maternal grandparents pending the June 23, 2014, temporary custody hearing. The maternal grandparents and the State argue that we have no jurisdiction under K.S.A. 2014 Supp. 38-2273(a) to consider an appeal of an ex parte order under K.S.A. 2014 Supp. 38-2242. We agree with the State and the grandparents.

In the case, *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 3, 329 P.3d 458 (2014), the Kansas Supreme Court held that K.S.A. 2014 Supp. 38-2273(a) specifically limits the appealable orders in a CINC case to those determining temporary custody, adjudication, disposition,

and a finding of unfitness or the termination of parental rights. Consequently, "[i]f an order in a child in need of care case does not fit within these five categories, it is not appealable." 299 Kan. 1100, Syl. ¶ 3.

The Supreme Court further clarified, "[t]emporary custody orders are the first appealable orders" under K.S.A. 2014 Supp. 38-2273(a). 299 Kan. at 1112. Because the phrase, "order of temporary custody" is a term of art with a particular description and meaning proscribed by K.S.A. 2014 Supp. 38-2243, it does not encompass ex parte orders issued under K.S.A. 2014 Supp. 38-2242. See 299 Kan. at 1116. Ex parte orders issued under K.S.A. 2014 Supp. 38-2242 upon a verified application are designed to be short-lived orders that remain in effect until the temporary custody hearing provided for in K.S.A. 2014 Supp. 38-2243. In other words, the Revised Code does not authorize an appeal from an ex parte order under K.S.A. 2014 Supp. 38-2242.

Following the ruling in *In re N.A.C.*, we hold that the June 19, 2014, ex parte orders were not within the class of orders from which there is appellate review. We lack jurisdiction to consider this issue.

Besides, the ex parte orders are also moot. The district court's subsequent temporary custody orders continuing custody of the boys with the maternal grandparents pending adjudication superseded the ex parte orders and eliminated any remaining justiciable controversy regarding custody of the children arising from the ex parte orders. Thus, any judgment that this court could enter regarding the ex parte orders would be ineffectual for any purpose.

*Father makes five due process complaints.*

*First*, Father complains that he was never served a summons and a copy of the CINC petition. This is a complaint of form over substance. Father was not entitled to the

notice and service of process provisions found in K.S.A. 2014 Supp. 38-2236 because the children had been taken into protective custody under the provisions of K.S.A. 2014 Supp. 38-2242 pending the temporary custody hearing. Thus, the relevant notice and service of process provisions was controlled by K.S.A. 2014 Supp. 38-2235(a)(2), *i.e.*, those necessary to initiate the CINC case when it was determined that a temporary custody hearing was required.

K.S.A. 2014 Supp. 38-2243(c) and (d) provides that,"[n]otice of a temporary custody hearing shall be given to all parties and interested parties . . . at least 24 hours prior to the hearing." Moreover, "[o]ral notice may be used for giving notice of a temporary custody hearing where there is insufficient time to give written notice." K.S.A. 2014 Supp. 38-2243(e). Once the temporary custody hearing is held, a copy of the CINC petition is then served on each party or interested party at the hearing. K.S.A. 2014 Supp. 38-2235(a)(2). Only if a party or interested party is not at the temporary custody hearing is a formal summons issued under K.S.A. 2014 Supp. 38-2236 with a copy of the CINC petition attached. K.S.A. 2014 Supp. 38-2235(a)(2).

Father acknowledges receiving telephone notice of the June 23, 2014, temporary custody hearing. The record indicates he received adequate oral notice on June 20, 2014, more than 24 hours prior to the June 23, 2014, temporary custody hearing. See K.S.A. 2014 Supp. 38-2242(d) and (e). Father elected not to personally appear at the June 23, 2014, temporary custody hearing and appeared by his attorney. Moreover, Father filed motions on June 23, 2014, challenging the CINC petition and requesting a continuance or rehearing. Because the district court granted Father's request for a rehearing so he could attend, a formal summons under K.S.A. 2014 Supp. 38-2236 was not necessary. See K.S.A. 2014 Supp. 38-2235(a)(2). At the conclusion of the June 27, 2014, temporary custody hearing, Father was personally served with a copy of the CINC petition. See K.S.A. 2014 Supp. 38-2235(2). Moreover, Father's attorney had a copy of the written petition at both temporary custody hearings.

10

Father had proper notice under the Revised Code.

*Second*, Father complains that the court should have granted him 3 more days to prepare. The statute, K.S.A. 2014 Supp. 38-2243(b), provides that a temporary custody hearing must be held within 72 hours following a child having been taken into protective custody. See K.S.A. 2014 Supp. 38-2242(b)(2). A district court may only grant a continuance extending the 72-hour statutory deadline under K.S.A. 2014 Supp. 38-2243(b) to comply with the 24-hour prior notice provisions of the statute. K.S.A. 2014 Supp. 38-2243(d).

Because Father received the proper statutory notice of the June 23, 2014, temporary custody hearing, he was not entitled to a continuance under the Revised Code.

*Third*, Father contends that the court denied his right to defend himself at the June 27, 2014, temporary custody hearing because he was not allowed to cross-examine the State's witnesses from the June 23, 2014, temporary custody hearing.

We are unpersuaded by this argument. Father had proper notice of the June 23, 2014, temporary custody hearing. He retained counsel, who had time to file three motions with the district court before the June 23, 2014, temporary custody hearing and entered an appearance on his behalf at the hearing, albeit by telephone. Consequently, any due-process implications that arose from Father's decision not to attend the June 23, 2014, temporary custody hearing or have his attorney physically appear or remain on the telephone to cross-examine the four witnesses that day are self-inflicted. Father clearly had the opportunity to be heard and defend his interest to make decisions regarding the care, custody, and control of his children. See *In re Care & Treatment of Hay*, 263 Kan. 822, 831, 953 P.2d 666 (1998).

11

Finally, on this point, Father offers no support for his contention that it is improper or a violation of due process for a district court to take judicial notice of a prior hearing in a CINC case or from a prior related CINC case involving the same children that the district court presided over. See K.S.A. 60-409(b)(4); K.S.A. 2014 Supp. 38-2211(a)(1); *In the Interest of A.S.*, 12 Kan. App. 2d 594, 598, 752 P.2d 705 (1988).

*Fourth*, Father complains about the guardian ad litem. He contends that the GAL was not at the June 23, 2014, temporary custody hearing, there was no evidence to support that the GAL "had ever even talked to the children in this case," and the GAL "was not engaged in the process, and clearly was confused as to his role in the case."

We find that no objection was made by Father that the GAL represented the children in such a manner as to indicate a lack of diligence on his part. See *In re McCoy*, 184 Kan. 1, 12, 334 P.2d 820 (1959). Regardless, such an objection would have been insufficient given the record established that the children were fully represented.

Indeed, the GAL did not attend the June 23, 2014, temporary custody hearing. However, the record indicates that the district court informed the parties at that hearing that a GAL had been appointed and apprised about the case. More importantly, the GAL was present and actively participated in both the June 27, 2014, temporary custody hearing and the adjudication hearings. And contrary to Father's baseless claim, the GAL informed the district court at the June 27, 2014, temporary custody hearing that he had spoken with the children the day before.

*Fifth*, Father complains of lack of discovery. Specifically, he avers that the district court failed to provide him a hearing under K.S.A. 38-2245 to rule on his motion to determine the limits of discovery and to sanction the maternal grandparents and State for subpoenaing confidential financial information.

12

That statute provides: "After a hearing and a finding that discovery procedures, as described in K.S.A. 60-226 through 60-237, and amendments thereto, will expedite the proceedings, the judge may allow discovery subject to limitations." K.S.A. 38-2245(a). This is a matter of discretion. See *In re Care & Treatment of Hay*, 263 Kan. at 839.

Father's due process complaint centers on his belief that K.S.A. 60-226(b)(6)—which sets forth the parameters for disclosure of expert testimony and the time requirements for such disclosures—excluded the expert testimony of O'Halloran because disclosure of her reports was not made more than 90 days prior to adjudication. Father argues the district court's ruling that he was not entitled to the O'Halloran reports because he "should have conducted discovery to see the experts' files, and/or asked the court for an in camera inspection of her file . . . impermissibly shifted the burden" to him.

The disclosure of O'Halloran's reports, a privately-retained therapist, was subject to disclosure under K.S.A. 38-2219, not K.S.A. 60-226. The district court's finding that Father was not entitled to the entire O'Halloran file complied with the requirements found in K.S.A. 38-2219(a),(c), and (e).

No due process violations occurred. We turn now to the temporary custody hearing and order that Father has appealed.

*We need not review the temporary custody orders.*

Basically, Father argues that the finding of probable cause required for the temporary custody orders placing the children in the custody of the maternal grandparents is not supported by clear and convincing evidence. A "temporary custody order" identifies the party that will have temporary custody of a child after the district court determines the child needs protection. See K.S.A. 2014 Supp. 38-2242; K.S.A. 2014 Supp. 38-2243; *In re D.M.M.*, 38 Kan. App. 2d 394, 398, 166 P.3d 431 (2007). The

13

maternal grandparents, citing *In re A.E.S.*, 48 Kan. App. 2d 761, 298 P.3d 386 (2013), argue that Father's issue regarding the temporary custody orders is moot because of the subsequent adjudication and disposition orders.

We hold this matter is moot. The district court issued temporary orders placing the children in the custody of the maternal grandparents. Although Father attempted to appeal these temporary orders issued by the district magistrate judge to the district judge as permitted by K.S.A. 2014 Supp. 38-2273, the Revised Code does not provide for a stay of the adjudication proceeding pending such an appeal.

The district court subsequently adjudicated both of the children as children in need of care and specifically ordered that the children shall remain in the custody of the maternal grandparents pending disposition. An order of adjudication is an appealable order under K.S.A. 2014 Supp. 38-2273(a). *In re N.A.C.,* 299 Kan. 1100, Syl. ¶ 3. The district court's specific reference to continuation of custody with the maternal grandparents in the adjudication order superseded the temporary custody order and eliminated any remaining justiciable controversy regarding custody of the children arising from the temporary orders.

A panel of this court in *In re A.E.S.* addressed a similar question of mootness. In that case, the father appealed the district court's order granting temporary custody of his child to Social and Rehabilitation Services. This court held that absent an exception to the rule, the father's appeal was moot since the subsequent adjudication ordering the child remain in the custody of SRS pending disposition had superseded the temporary order. 48 Kan. App. 2d at 765. Thus, the continuation of custody with SRS eliminated any remaining justiciable controversy regarding the custody of the child arising from the temporary order. See *State v. Montgomery*, 295 Kan. at 837, 840, 286 P.3d 866 (2012).

The panel in *In re A.E.S.* also found the disposition order supported this conclusion. Because the disposition order explicitly stated the father agreed that the custody of his child shall remain with SRS and that "[r]eturning the child to a parental home on a full-time basis is contrary to the child's welfare," the father had effectively conceded the issue that his child was in need of protection. In other words, the agreement rendered the father's arguments regarding the sufficiency of the evidence moot because the disposition order concluded the evidentiary issues. 48 Kan. App. 2d at 765-66. Nevertheless the panel retained the appeal to consider the constitutional issues raised by the father. 48 Kan. App. 2d at 766-72.

As a rule, appellate courts do not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy, which recognizes that the court's role is to determine real controversies relative to the legal rights of persons and properties that are actually involved in the particular case properly brought before it and to adjudicate those rights so that the determination will be operative, final, and conclusive. *Montgomery*, 295 Kan. at 840. We issue no advisory opinion here. We turn now to the ultimate issue of the case—the sufficiency of the evidence showing the boys are children in need of care.

*These boys were children in need of care.*

On this point, the law is well settled—the burden is on the State to prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2014 Supp. 38-2250. Clear and convincing evidence is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt. *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). The Kansas Supreme Court has clarified our role:

> "[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most

favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence." 286 Kan. at 705.

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705. Moreover, to the extent our review requires us to interpret the provisions of K.S.A. 2014 Supp. 38-2202(d)(3), which is a question of law, we have unlimited review. See *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

Finally, the legislature has made it clear that the Revised Code shall be liberally construed to carry out the policies of the State. K.S.A. 2014 Supp. 38-2201(b). Those policies are, in part, to consider the safety and welfare of a child to be paramount in all proceedings under the Revised Code; make the ongoing physical, mental, and emotional needs of the child decisive considerations in all proceedings under the Revised Code; and provide for the protection of children who have been subject to physical, mental, or emotional abuse or neglect. See K.S.A. 2014 Supp. 38-2201(b)(1), (3), (7).

*The evidence supports the court's finding.*

The testimony at the evidentiary hearing, when viewed in the light most favorable to the State, unmistakably supports the district court's finding that the children were without adequate parental care, without the care or control necessary for their health, and that Father's actions constituted abuse or neglect.

Two therapists testified about the children's mental and emotional health before and at the time of the CINC petitions. Krehbiel testified that, based on her previous examination of the children during the 2013 CINC cases, she had both recommended and expected that grief and other counseling for the children due to the death of their mother

16

would be ongoing. The record indicates the children stopped going to the court-ordered therapy from the 2013 CINC cases in December 2013. Krehbiel subsequently diagnosed the children with adjustment disorder, anxiety, and bereavement.

O'Halloran met with the children on a weekly basis beginning in July 2014. O'Halloran diagnosed K.D.C. as having a depressive or general anxiety disorder and suffering from nightmares. She diagnosed K.W.C. as having a general anxiety disorder and suffering from bereavement and encopresis. O'Halloran concluded that the children were suffering from these disorders because they "don't like to be left alone, which they have told me numerous countless times." O'Halloran also found that after the children were removed from Father's home, K.W.C.'s episodes of encopresis were decreasing and that K.D.C.'s nightmares had "significantly decreased." The same report also noted that K.W.C.'s episodes of encopresis only occurred after talking with Father.

O'Halloran also found that because of the lack of care by Father, K.W.C. "has been parentified and forced to take on the caregiver role to [his brother K.D.C.]." She describes K.W.C.'s parentifaction as causing him a great amount of stress. O'Halloran also expressed concern with the children's ability to form attachments in future relationships given the revolving door environment of multiple caregivers or girlfriends and the correlated impact on the children's grief from having to call each different girlfriend "mom." O'Halloran concluded that the children's time spent living with Father was causing damage to their mental or emotional health.

Concerning the home environment, Father acknowledged that he travelled 6 months of the year. Herbst testified that he saw that the children were routinely left to wander the busy truck yard where the residence was located without supervision, they were in charge of themselves, they had complained about being hungry, and they spent time with Father online as he looked for a "new mom" for them. Zuspann testified that if she was not there to cook dinner for Father, that task fell to K.W.C. Acton, Zuspann, and

17

Surbeck each confirmed that the children called them "mom" during their brief relationships with Father. In Surbeck's case, this began after the children only knew her for 10 days.

Surbeck confirmed that Father gave her power of attorney over the children the same month he both met her for the first time and went to jail in May 2014. The record also indicates that Surbeck gave Father $40,000 before meeting him in May 2014 for the first time. Surbeck admitted that she had offered to take the children to California while he was incarcerated and that Father had intended to give her complete control over the children during his incarceration. Finally, Sherriff Rugg testified about Father's pending criminal charges for the possession of a firearm and described how the firearm was found on top of the television in the home.

The evidence, when viewed in the light most favorable to the State, provides ample clear and convincing evidence adjudicating each of the boys as children in need of care. See K.S.A. 2014 Supp. 38-2250.

Affirmed.