(183 P.3d 4)
No. 98,105

IN THE MATTER OF THE CARE and TREATMENT OF JOHN COLT.

Opinion filed May 9, 2008.

*Michael M. Jackson*, of Topeka, for appellant.

*Nola F. Wright*, assistant attorney general, for appellee.

Before GREENE, P.J., ELLIOTT and PIERRON, JJ.

GREENE, J.: John Colt challenges his involuntary civil commitment under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq.*, after a jury found beyond a reasonable doubt that he was a sexually violent predator. He argues the district court erred in admitting evidence of his prior juvenile adjudications and convictions of crimes that were not sexually motivated, and he

challenges the sufficiency of the evidence to support his commitment. We affirm.

### *Factual and Procedural Background*

Pursuant to a plea agreement, Colt was convicted in 2001 of one count aggravated sexual battery and one count aggravated burglary and was sentenced to 60 months' imprisonment. Shortly before his release from prison, the State petitioned for his civil commitment pursuant to KSVPA. After a court-ordered evaluation, clinicians at Larned State Security Hospital (Larned) diagnosed Colt with paraphilia, not otherwise specified, and antisocial personality disorder and opined that he qualified as a sexually violent predator.

After numerous continuances attributable to Colt, the district court commenced a jury trial under K.S.A. 59-29a06 in September 2006. Prior to selecting a jury, the court allowed argument on Colt's motion in limine, wherein Colt sought to exclude evidence of his numerous prior juvenile adjudications and convictions for nonsexually motivated crimes. The court denied the motion, concluding: (i) K.S.A. 60-455 was inapplicable; (ii) the prior convictions were relevant to a pattern of behavior and constituted information upon which the experts relied in forming their opinions; and (iii) the probative value of such evidence outweighed its inherent prejudice. Colt was granted a continuing objection to admission of this challenged evidence.

During the State's case, Dr. Rex Rosenberg was called as the principal expert. His testimony began with an overview of the process involved in diagnosing personality disorders or mental abnormalities and in conducting an evaluation to determine whether an offender meets the criteria for confinement under the KSVPA. He then listed the information that he deemed "relevant and significant" in arriving at Colt's diagnosis, including 15 or 16 events reflected in Colt's criminal history. These events were generally described for the jury (over the renewed objection of the defense) and were ultimately listed in the district court's memorandum denying Colt's motion for new trial as including:

"1. 1991  battery and criminal damage to property
"2. 1993  theft and burglary

"3. 1993  unlawful deprivation of property
"4. 1994  unlawful deprivation of property
"5. 1994  battery
"6. 1995  criminal damage to property over 500
"7. 1995  disorderly conduct
"8. 1995  disorderly conduct
"9. 1996  theft under $500.00
"10. 1997  battery on a law enforcement officer
"11. 1997  battery
"12. 1997  forgery and theft."

At the close of direct examination, Dr. Rosenberg tied his general discussion about the criteria used by mental health professionals for diagnosing paraphilia, not otherwise specified, and antisocial personality disorder to his actual diagnoses of Colt. Rosenberg found Colt fit the criteria for the paraphilia diagnosis because of his rape fantasies for years, the nonconsenting nature of his reported rape of a prostitute, and his attempted rape of his 19-year-old neighbor. Rosenberg further described how Colt's pattern of behavior, including the numerous crimes he committed and behavioral problems since a very young age, also fit the criteria for antisocial personality disorder. Rosenberg further diagnosed Colt as suffering from "alcohol dependence, partial sustained remission in a controlled environment, [and] cannabis dependence, impartial sustained remission in a controlled environment." In conclusion, Rosenberg opined that in his clinical judgment, Colt had repeatedly demonstrated that he had "serious difficulty in controlling his behavior." Combining his clinical judgment and scoring of the actuarial tools, Rosenberg further opined that Colt was at a high risk to reoffend.

Following Colt's own testimony and brief character testimony of a jailer who came to know Colt during his confinement in Shawnee County, the jury found Colt to be a sexually violent predator.

Colt timely moved for a new trial due to the admission of his prior juvenile adjudications and convictions for nonsexually motivated crimes and based on insufficiency of the evidence. After a hearing, Colt was granted leave to supplement his new trial motion to argue the applicability of the Kansas Supreme Court's October 27, 2006, decisions governing the admissibility of evidence under

K.S.A. 60-455—*State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), and the inadmissibility of expert opinions based upon unauthenticated hearsay evidence—*State v. Gonzalez*, 282 Kan. 73, 145 P.3d 18 (2006). The State separately responded to both motions. The trial court entered a detailed order denying Colt's motion for new trial. This appeal followed.

### *Overview of the Kansas Sexually Violent Predators Act*

The KSVPA is an act for the commitment of sexually violent predators. It establishes a procedure for identification and involuntary civil commitment of such predators "for the potentially long term control, care and treatment" of such persons "in an environment separate from persons involuntarily committed" under other statutory regimes. K.S.A. 59-29a01. The ultimate step in the process of commitment is the right of trial by jury "to determine whether the person is a sexually violent predator." K.S.A. 59-29a06; see also *In re Care & Treatment of Foster*, 280 Kan. 845, 853-61, 127 P.3d 277 (2006) (although the trial is characterized as civil in nature, it possesses many characteristics of a criminal proceeding).

The statutory scheme defines "sexually violent predator" as "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 59-29a02(a). The phrase "likely to engage in repeat acts of sexual violence" is defined as "the person's *propensity* to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." (Emphasis added.) K.S.A. 59-29a02(c). These fundamental aspects of the KSVPA are critical to our analysis of the issues before us.

### *Did the District Court Err in Admitting Evidence of Colt's Criminal History?*

Colt's primary argument on appeal is that the district court erred in admitting evidence of Colt's prior juvenile adjudications and convictions for nonsexually motivated crimes. When the district court has admitted evidence over a timely objection at trial, we first consider whether the evidence is relevant. Once relevance is es-

tablished, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district court's discretion, depending on the contours of the rule in question. *State v. Ross*, 280 Kan. 878, 881, 127 P.3d 249 (2006).

Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. K.S.A. 60-407(f). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish. *State v. Lumley*, 266 Kan. 939, 950-51, 976 P.2d 486 (1999).

### *Was Evidence of Colt's Criminal History Inadmissible Under K.S.A. 60-455?*

Colt argues that his criminal history was propensity evidence rendered inadmissible by the prohibition of K.S.A. 60-455, which states:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong *as the basis for an inference that the person committed another crime or civil wrong on another specified occasion* but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." (Emphasis added.)

Focusing on the language italicized above, the district court concluded that K.S.A. 60-455 has no application in a proceeding under the KSVPA, reasoning that the statutory language prohibiting such evidence as a basis "for an inference that the person committed another crime or civil wrong on another specified occasion" rendered the statute inapplicable to a proceeding under the KSVPA where propensity is the issue.

In denying Colt's motion for new trial, the district court cited and quoted extensively from *In re Care & Treatment of Hay*, 263 Kan. 822, 953 P.2d 666 (1998), where our Supreme Court stated that the prohibitions of K.S.A. 60-455 are not applicable or governing in a case of this nature. Relying on the notion that our appellate courts had, on several instances, admitted evidence pro-

hibited by K.S.A. 60-455 based upon criteria independent of the statute, the court concluded that evidence of prior sexually violent convictions should be admissible because the critical issues in a KSVPA case "make the evidence of prior conduct, charged or uncharged, material evidence in the case." 263 Kan. at 837.

Colt acknowledges the broad holding of *In re Care & Treatment of Hay* but argues it did not address the admissibility of evidence of nonsexually violent criminal history and has been superceded if not overruled by *Gunby*, 282 Kan. at 57, where our Supreme Court held that "[h]enceforth, admissibility of any and all other crimes and civil wrongs evidence will be governed by K.S.A. 60-455" and put "an end to the practice of admission of other crimes and civil wrongs evidence independent of the statute."

We conclude that *In re Care & Treatment of Hay* remains good law despite the Supreme Court's sweeping statement in *Gunby* putting at an end independent admissibility of prior crimes evidence. Not before the court in *Gunby*, and not contemplated by its holding, were the unique features of the KSVPA, which enable the involuntary commitment of an offender based upon his or her propensity to commit certain crimes. See K.S.A. 59-29a01(a), (b), and (c). More importantly, however, is that the Supreme Court's use of the term "independent" in *Gunby* implies an independence *from* the statutory prohibitions in K.S.A. 60-455, and there is no reason to extend this holding to situations where the statute is not applicable in the first place.

We agree with the court's holding in *In re Care & Treatment of Hay* that K.S.A. 60-455 is simply not applicable in cases of this nature. In establishing one's propensity to commit repeated acts of sexual violence (as required by K.S.A. 59-29a02[c]), prior juvenile adjudications and convictions are *not* being offered to infer that the alleged predator "committed another crime or civil wrong on another specified occasion" under K.S.A. 60-455. By virtue of its own language, K.S.A. 60-455 does not fit this situation and serves as no bar to the admission of such evidence in KSVPA proceedings.

## *Where Criminal History Is Not of a Sexually Violent Nature, Is Such Evidence Relevant to a KSVPA Proceeding?*

Our holding that K.S.A. 60-455 is inapplicable does not resolve the issue before us. Having determined that the challenged evidence was not barred by statute, we must determine if it was relevant. See *Ross*, 280 Kan. at 881. Colt argues that his prior juvenile adjudications and convictions were not shown to be sexually violent and had no relevance to his "propensity to commit acts of sexual violence." This could be a successful argument in the absence of the connection made by the State's expert between such acts and his diagnosis of Colt's antisocial personality disorder. Our review of the record has convinced us that this crucial link was made, thus rendering the evidence relevant.

Dr. Rosenberg specifically noted that the diagnostic criteria for antisocial personality disorder may include conduct reflected in nonsexually violent actions. He testified:

"The diagnostic criteria for antisocial [personality] disorder reads as follows: A. There's a pervasive pattern of disregard for [and] violation of the rights of others occurring since age 15 years. As indicated by three or more of the following, it lists seven things under, A, number 1. Failure to conform to the social norms with respect to lawful behaviors. *As indicated by repeatedly performing acts that are grounds for arrest.* 2. Deceitfulness as indicated by repeatedly [lying,] use of aliases or conning others for personal [profit] or pleasure. 3. [impulsivity or] failure to plan ahead. 4. Irritability and aggressiveness *as indicated by repeated physical fights [or] assaults.* 5. Reckless disregard for the safety of self or others. 6. Consistent . . . [irresponsibility] as indicated by repeated failure to sustain consistent work behavior or honor financial obligations. 7. Lack of remorse as indicated by being indifferent [to] or rationalizing having hurt, mistreated or stolen from another. Criteria B: Is that, the individual is at least age 18. Criteria C: *There's evidence of conduct disorder onset before age of 9 [sic] years.* And Criteria D: The occurrence of antisocial behavior is not [exclusively] during the course of schizophrenia or manic episodes." (Emphasis added.)

Rosenberg relied in part on Colt's general criminal history for his diagnosis that Colt had antisocial personality disorder. He testified:

"A. Well, it starts out by saying, there's a pervasive pattern and disregard for the rights of others, occurring since the age of 15 years, as indicated by three or one of the following. One was the failure to follow the norms, with respect to the

behaviors as reported, that are acts for grounds for arrest. *Mr. Colt has an extensive history of illegal acts, and I believe I mentioned yesterday, 15 or 16 different cases that I'm aware of that fits that criteria."* (Emphasis added.)

Having diagnosed Colt with antisocial personality disorder and paraphilia, Rosenberg testified that Colt had serious difficulty in controlling his behavior and was a high risk to reoffend. The totality of Rosenberg's testimony leads us to conclude that it was a combination of these diagnoses that supported his expert opinion on Colt's propensity to reoffend, and the nature of any new offense would presumably be consistent with the paraphilia, which is described as:

"Recurrent intense sexually aroused fantasies, sexual urges, or behaviors, generally involving: 1. [nonhuman] objects. 2. The suffering or humiliation of one's self or one's partner; or 3. Children or other non-consenting persons that occur over a period of over six months."

Under the facts of this case, Colt's general criminal history—including nonsexually violent conduct—was deemed by the expert witness as significant to a diagnosis of personality disorder which, when coupled with a diagnosis of paraphilia, not otherwise specified, caused the expert to conclude that Colt was a high risk to reoffend. Where such general criminal history has been shown significant to a clinical diagnosis that supports an expert's ultimate opinion in a KSVPA case, we must conclude the evidence of such criminal history is relevant.

### *Was Dr. Rosenberg's Opinion Testimony Inadmissible Due to its Basis on Records Not Formally Admitted into Evidence?*

Finally, Colt argues that his criminal history was never admitted into evidence and that the district court's determination of admissibility through the expert's testimony "stands on its head" the Supreme Court's opinion in *State v. Gonzalez*, 282 Kan. 73, 145 P.3d 18 (2006). In *Gonzalez*, the court held that the defendant's expert could not base an opinion as to the defendant's competency on unauthenticated and inadmissible records. 282 Kan at 85-88.

We are unimpressed with this argument because Colt stipulated to the foundation of the records on which the experts based their opinions in this case and then agreed that the rather voluminous

records need not be admitted into evidence. Under these circumstances, *Gonzalez* is of no solace to Colt's evidentiary challenge.

In summary, we hold that in a KSVPA proceeding, evidence of the respondent's general criminal history—even if not of a sexually violent nature—is not barred by K.S.A. 60-455 because the statute is not applicable in KSVPA proceedings. We hold that where such evidence is shown to be significant to clinical diagnoses having a direct relationship to the ultimate issue in KSVPA proceedings, the evidence is relevant and admissible. Here, the district court did not err in allowing such evidence to be shared with the jury in support of the expert's opinions as to Colt's diagnoses.

### *Was There Sufficient Evidence to Support Colt's Civil Commitment?*

In his second issue on appeal, Colt challenges the sufficiency of the evidence to support the jury's conclusion that he is a sexually violent predator. When the respondent has challenged a verdict in a KSVPA case, our standard of review is whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable factfinder could have found the defendant to be a sexually violent predator beyond a reasonable doubt. *In re Care & Treatment of Hay*, 263 Kan. at 842. This court, however, will not weigh the evidence or pass upon the credibility of the witnesses and must review the evidence in the light most favorable to the State. *In re Care & Treatment of Ward*, 35 Kan. App. 2d 356, 370-71, 131 P.3d 540, *rev. denied* 282 Kan. 789 (2006).

In his rather brief argument, Colt highlights evidence tending to suggest that he was no longer a danger to society. He then rehashes the issue of admission of his 12 prior convictions, arguing that were it not for the admission of that evidence "[t]he jury might have believed [he] was not a sexual predator." We disagree. The record is replete with evidence to support the verdict.

As a part of his overall testimony, Dr. Rosenberg discussed Colt's scores on the actuarial risk assessment instruments. For example, the Status-99 risk assessment revealed that Colt was at a high risk for reoffending, with his statistical risk of being convicted of a sex-

ual offense ranked at 39% over 5 years, 45% over 10 years, and 52% over 15 years; and his statistical risk of being convicted of a violent offense at 44% over 5 years, 51% over 10 years, and 59% over 15 years. Colt also scored in the high-risk category on the Minnesota sex offender screening tool, with a 54% likelihood of committing—but not necessarily being convicted of—another offense within 6 years of being released.

When Dr. Rosenberg asked Colt about his disturbing murder fantasies revealed in treatment, Colt denied having thoughts of strangling or killing people with knives, instead describing his fascination with reading "true crime" books at that time, which "kept him focused on the wrong stuff." Colt reported to Rosenberg that when he read these books about serial killers, "he thought to himself, 'It would relieve a lot of stress' " to kill someone. Although Colt denied having ever planned to kill someone, referring to the incident that led to his aggravated sexual battery conviction, he acknowledged he could have killed his 19-year-old neighbor when he choked her during his attempt to rape her.

We also note the evidence of Richard Kendall, who became involved in Colt's treatment after Kendall's clinical staff expressed concerns about Colt's repeated comments during counseling sessions that he had recurrent, intense fantasies of raping, stabbing, and murdering people and that he wanted to be a serial killer when he got out. Despite Kendall's warnings to Colt that such comments are taken seriously and should not be made in jest or to buttress his image amongst other inmates, Colt persistently disclosed his deviant rape and murder fantasies during therapy sessions. In Kendall's opinion, Colt lacked the ability to intervene in his persistent pattern of deviant sexual fantasies by setting realistic and attainable goals. Most damning was a chart introduced during Kendall's testimony that reflected Colt's own description of his thoughts and feelings since age 18. The chart included Colt's self-disclosure of feeling at the time of various events he considered significant in his sexual history. On one such occasion he stated: "I hate women. They are all Bitches. They don't deserve to be treated good. Once I get out I'm going on a raping spree."

We acknowledge that Colt's own testimony reflected some therapeutic progress as argued by Colt on appeal. Colt testified that he had sex fantasies in the past, but he insisted they had ceased. He claimed that his sexually deviant and other disturbing disclosures during his treatment were exaggerations and lies to appease his therapist, so he could remain in the program and retain the attendant prison privileges. This testimony, however, does little to mitigate the rather overwhelming evidence introduced by the State.

Colt's argument disregards the fact that this court reviews the evidence in a light most favorable to the State and cannot reweigh or assess credibility to the evidence. As fully detailed above, the State presented evidence that Colt suffers from paraphilia, not otherwise specified, and antisocial personality disorder. Based on Colt's own statements during his treatment program, his actuarial risk assessment scores, and the Rosenberg opinions, we are convinced the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Colt was a sexually violent predator subject to involuntary civil commitment under the KSVPA.

Affirmed.