(265 P.3d 565)
No. 103,964

IN THE MATTER OF THE CARE AND TREATMENT OF
MARK PALMER.

Opinion filed November 10, 2011.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., MARQUARDT and HILL, JJ.

HILL, J.: We affirm the trial court in this case and reject all three of the claims of error raised by the appellant. Mark Palmer contends the trial court erred when it failed to dismiss his sexually violent predator case when one of the evaluators at Larned State Security Hospital opined he was not a predator while another evaluator said he was. Because this evidence arose after Palmer stip-

ulated there was probable cause to believe he was a sexually violent predator, we hold Palmer's motion to dismiss was really a motion for summary judgment. Obviously, to rule upon such a motion, the trial court would necessarily have to weigh evidence, which a court cannot do when ruling on a motion for summary judgment. We hold the trial court correctly denied the motion and submitted the case to the jury.

In another issue raised by Palmer, we hold there is sufficient evidence in the record for the jury to find he is a sexually violent predator. The record discloses that Palmer had been convicted of a sexually violent offense and that he suffers from a mental abnormality or personality disorder. There is testimony that Palmer is likely to commit repeat acts of sexual violence and has serious difficulty controlling his dangerous behavior.

Finally, we find the admission of several images of child pornography (with the children's faces redacted) from the multitude of images found on Palmer's computer was not erroneous. They were relevant and material to the issues in his sexually violent predator proceeding because the State was required to prove he had been convicted of a sexually violent offense. Further, the images served as evidence of Palmer's propensity to commit sexually violent acts in the future because Palmer's viewing of such images served as the basis for the revocation of his parole. The images were not unduly prejudicial because the trial court wisely limited the number shown to the jury and had the faces of the children concealed.

*Convicted of sexual exploitation of a child, Palmer has his first evaluation.*

After being convicted for a violation of K.S.A. 21-3516, Palmer served a 32-month prison sentence for possessing child pornography on his computer. As Palmer's prison term neared its end, the State sought to commit Palmer as a sexual predator under the Kansas Sexually Violent Predator Act (Act), K.S.A. 59-29a01 *et seq.* Palmer waived his right to a probable cause hearing under K.S.A. 59-29a05. Dr. John Reid of the Larned State Security Hospital examined Palmer and concluded that Palmer did not meet the

criteria of a sexually violent predator. The State voluntarily dismissed its petition and paroled Palmer in February 2008, but just 7 months later his parole was revoked.

Palmer's parole officer testified that Palmer had admitted to another Department of Corrections employee that he tried to access child pornography using a nudism website. No pornography was found on Palmer's computer at this time. Palmer explained during his revocation hearing that he had failed parole intentionally because he was afraid that if he did well in his weekly sex offender treatment group, he would be transferred to a monthly group and not receive the help he needed. Palmer went back to prison.

*The State filed a second petition to determine if Palmer was a sexually violent predator.*

Then, when it was nearing the time for his release, on November 10, 2008, the State filed this petition to have Palmer deemed a sexually violent predator. Again, Palmer waived his right to a probable cause hearing. Palmer was admitted to the Larned State Security Hospital for an evaluation. On February 6, 2009, the trial court was notified that the evaluating clinicians, Dr. Greg Shannon and Dr. Reid, had determined Palmer did not qualify as a sexually violent predator.

In response, Palmer filed a motion to dismiss and/or for summary judgment, arguing that given the results of the court-ordered evaluation at the State's facility there were no factual issues in dispute that merited continuing the commitment proceedings. The State filed a response arguing that the statutory mechanism under the Act does not provide for summary judgment or pretrial dismissal on the facts. The trial court subsequently denied Palmer's motion, ruling that K.S.A. 59-29a06(a) does not have a provision for such a dismissal.

*There was ample evidence of Palmer's mental abnormality presented at his jury trial.*

At Palmer's jury trial, the State presented testimony from two expert witnesses who evaluated Palmer: Dr. Shannon, a psychologist at Larned who has conducted approximately 20 court-ordered

sexual predator evaluations in Kansas, and Dr. Mitch Flesher, a forensic psychologist at Lansing Penitentiary who has conducted approximately 700 risk assessment evaluations on inmates who were being considered under the Act prior to being released on parole.

The seven remaining State's witnesses included Jack McNeley-Phelps, a therapist for Johnson County Mental Health, who treated Palmer in 2005. McNeley-Phelps sent a letter to the parents of an 11-year-old girl in Rhode Island, with an attached letter from Palmer, notifying them about Palmer's recurring thoughts of kidnapping their daughter.

Brian Pickens also testified. He is the FBI special agent in Kansas who began the FBI investigation regarding the letters sent to the people in Rhode Island. Pickens initially seized the child pornography images which resulted in Palmer's underlying conviction.

Also, Kenton Thompson, an Olathe Police Department detective, testified. He also conducted an investigation resulting in Palmer's underlying conviction. Jeffry Owen, the computer forensic examiner who examined Palmer's computer in 2005 and recovered child pornography images, gave testimony. Palmer's brother-in-law, Chris Tressin, told the jury about the letters he received from Palmer in 2006 while Palmer was incarcerated. Mike Gardner, Palmer's parole officer, and Kipp Low, the Department of Corrections employee who Palmer told he had violated his own parole, also gave evidence.

Palmer testified in his own defense and presented testimony from his mother, Laura Palmer.

During trial, both Dr. Flesher and Dr. Shannon agreed that Palmer suffered from pedophilia, major depressive disorder, and borderline personality disorder. Dr. Shannon believed Palmer did not fit the prototypical pedophile because Palmer's troubling thoughts and fantasies began as an adult, not during adolescence, and Palmer considers his thoughts disturbing rather than positive. Dr. Shannon indicated Palmer's pedophilia was related to the presence of an obsessive compulsive disorder. Dr. Flesher disagreed with any connection between Palmer's pedophilia and an obsessive compulsive disorder; however, he agreed that the onset of pedo-

philia begins during adolescence and Palmer's pedophilia was unusual because he has disclosed his stressful, rather than pleasurable, thoughts and fantasies about children to anybody that would listen. Both experts gave conflicting opinions concerning whether Palmer's mental abnormality or personality disorder makes Palmer likely to reoffend.

Dr. Shannon completed his report after interviewing Palmer seven times for a total of approximately 8 hours, reviewing Palmer's records, and administering two psychological assessment tools and the Minnesota Sex Offender Screening Tool-Revised. The MnSOST-R is an actuarial assessment test designed to measure the risk of sexually violent recidivism. Dr. Shannon used the MnSOST-R because, unlike the Static-99, it is a valid test for someone with Palmer's noncontact conviction. Palmer scored -4 on the MnSOST-R, placing him in the Level 1 low risk category for sexual recidivism with a 10-12 percent risk of reoffending over a 6-year period. The level 1 category is the lowest of three levels and requires a score of 3 or less.

Dr. Shannon concluded that Palmer has a "very small" or low risk to reoffend and does not meet the criteria for a sexually violent predator. Specifically, Dr. Shannon concluded Palmer's fear of acting on his desire to be sexual with a child is more of a result of his obsessive compulsive illness. Dr. Shannon noted that Palmer "remains committed to receiving treatment for his obsessive thoughts" and has responded well to his medications controlling his depression and obsessive compulsive issues, resulting in fewer sexual fantasies regarding children. Dr. Shannon recommended continued sex offender treatment, therapy, and medication compliance during his postrelease control.

Dr. Flesher disagreed with the recommendation in Dr. Shannon's report. Dr. Flesher's report to the multidisciplinary committee made prior to Dr. Shannon's report recommended that Palmer should receive further group and individual treatment at Larned. The State did not admit a copy of Dr. Flesher's report at trial. Dr. Flesher concluded "beyond a reasonable doubt" that Palmer is likely to commit repeat acts of sexual violence by having sexual contact with a child. Dr. Flesher formed his conclusion after re-

viewing Palmer's records and conducting a risk assessment interview lasting approximately 1 hour. Dr. Flesher did not administer any actuarial tests because Palmer had committed a noncontact offense. Dr. Flesher testified that after he conducted Palmer's examination, it was possible he told Palmer he would not need to go to Larned.

In addition to admitting a copy of the journal entry of Palmer's underlying conviction, the State attempted to publish a packet of printed material containing dozens of recovered images of nude and semi-nude children taken from Palmer's computer and used to convict him in his underlying felony. The trial court allowed the State, over defense counsel's objection, to publish a limited number of redacted images.

The jury decided that Palmer was a sexually violent predator. The court committed him for treatment.

*We give a brief review of the Sexually Violent Predator Act.*

The Act, found at K.S.A. 59-29a01 *et seq.*, is a self-contained statutory scheme, and its commitment process, is considered a civil proceeding, not a criminal one. *Kansas v. Hendricks*, 521 U.S. 346, 361, 365, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997); *In re Care & Treatment of Hay*, 263 Kan. 822, 830, 953 P.2d 666 (1998). However, our Supreme Court has acknowledged that the involuntary civil commitment process possesses many characteristics similar to criminal proceedings. For example, the civil commitment process involves the Attorney General as the "prosecuting attorney" and entitles the respondent to assistance of counsel if indigent. The Act requires a unanimous verdict of a jury, K.S.A. 2010 Supp. 59-29a07(a), and carries the peril of an indefinite commitment to the custody of the Secretary of Social and Rehabilitation Services. K.S.A. 2010 Supp. 59-29a07(a)-(d). These proceedings require a probable cause hearing, K.S.A. 59-29a05, which is analogous to a criminal preliminary hearing. See *In re Care & Treatment of Foster*, 280 Kan. 845, 853, 127 P.3d 277 (2006).

*A motion for summary judgment is not available in this type of proceeding.*

Palmer argues that a respondent in a sexual commitment proceeding under K.S.A. 59-29a01 *et seq*. has the constitutional right to a pretrial motion to dismiss the proceeding. Consequently, Palmer asserts the trial court erred in denying his motion to dismiss. We reject Palmer's argument for two reasons. First, it ignores the probable cause provision of the Act in K.S.A. 59-29a05. Second, a trial judge confronted with a motion for summary judgment is prohibited by law from weighing evidence, and to rule on such a motion in this context would require the court to weigh the conflicting testimony of two experts.

This question obviously calls for us to interpret several statutes, and the interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

Palmer's argument is at odds with the purpose of the probable cause hearing under K.S.A. 59-29a05. A trial court's determination of probable cause under the Act must be compared to a probable cause determination at the preliminary examination stage of a felony criminal proceeding in that it "requires evidence sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the accused is a sexually violent predator." *Hay*, 263 Kan. at 834. Given that a preliminary examination "is an inquiry as to whether the defendant should be held for trial," if the parties waive the preliminary examination, the trial court "shall order the defendant bound over to the district judge having jurisdiction to try the case." K.S.A. 2010 Supp. 22-2902(4); see *State v. Hunter*, 232 Kan. 853, 854, 658 P.2d 1050 (1983). If there is to be a motion to dismiss filed, it must be filed before the court's determination of probable cause.

Here, when the State filed its petition, it believed it had sufficient evidence that Palmer met the definition of a sexually violent predator. See K.S.A. 2010 Supp. 59-29a04(a). Once Palmer waived his right to a probable cause hearing under K.S.A. 59-29a05, he agreed there was sufficient evidence to bind him over for trial. At

this point, the Act imposed three mandatory procedural requirements on the trial court. First, the trial court shall order Palmer to submit to an evaluation to determine whether he is a sexually violent predator. See K.S.A. 59-29a05(d). Second, the trial court shall conduct a trial within 60 days after the K.S.A. 59-29a05 probable cause determination to determine whether Palmer is a sexually violent predator. See K.S.A. 59-29a06(a). Third, given that the Attorney General shall have a right to demand a jury trial under K.S.A. 59-29a06(c), the trial court must comply with the Attorney General's request for trial by jury. Had the Attorney General or Palmer not demanded a jury trial, the trial shall be before the trial court. See K.S.A. 59-29a06(c).

On appeal, Palmer points out that pretrial motions to dismiss in Kansas exist in both criminal and civil procedure under K.S.A. 2010 Supp. 22-3208(1), (4) (pleadings and motions), K.S.A. 2010 Supp. 60-256 (summary judgment), and K.S.A. 2010 Supp. 60-212 (defenses and objections). Also, Palmer acknowledges that there is no specific statute in the Act that creates such a remedy between the trial court's probable cause determination under K.S.A. 59-29a05 and completion of a trial under K.S.A. 59-29a06(a).

This brings up our second reason for rejecting Palmer's argument. Summary judgment is not available to either the State or the respondent in proceedings to determine if someone is a sexually violent predator after a probable cause finding. K.S.A. 2010 Supp. 60-256 and Supreme Court Rule 141 (2010 Kan. Ct. R. Annot. 228) set out the steps a party must take when seeking summary judgment. The State makes a valid point here that surely a motion for summary judgment by the State on the merits of a sexually violent predator proceeding is contrary to the spirit of the Act. The clear direction of K.S.A. 59-29a06(a) is that such questions are *for trial*, either by the court or a jury.

Further, if the respondent seeks summary judgment on the merits, as Palmer did here, it conflicts with the long-standing precedent that "neither the trial court nor this court can or should weigh the relative factual positions of the parties in the context of summary judgment." *City of Arkansas City v. Bruton*, 36 Kan. App. 2d 42, Syl. ¶ 10, 137 P.3d 508 (2006), *rev'd on other grounds*, 284 Kan.

815, 166 P.3d 992 (2007). Here, the court confronted with this motion would have had to weigh and decide whether Dr. Flesher's or Dr. Shannon's testimony was more persuasive. Such weighing is inappropriate for motions for summary judgment.

We find no error in the trial court denying Palmer's motion for dismissal.

*There was ample evidence to conclude Palmer was a sexually violent predator.*

Palmer argues there was insufficient evidence to support a finding that he is a sexually violent predator subject to involuntary civil commitment. The statutory requirements under K.S.A. 2010 Supp. 59-29a02(a) combined with the holding in *Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002), impose four elements that the State must prove beyond a reasonable doubt: (1) the individual has been convicted of or charged with a sexually violent offense; (2) the individual suffers from a mental abnormality or personality disorder; (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder; and (4) the individual has serious difficulty controlling his or her dangerous behavior. See K.S.A. 59-29a06(a); K.S.A. 2010 Supp. 59-29a07(a),(e).

To answer such a question as this, we must review all of the evidence, viewed in the light most favorable to the State, and decide if we are convinced a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that Palmer is a sexually violent predator. See *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

Palmer takes issue only with the proof the State presented on the third and fourth elements in *Crane*.

The thrust of Palmer's argument centers on the third element— whether Palmer is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder—and focuses on the actuarial data results, or lack thereof. Palmer argues that his MnSOST-R results placed him at a low risk to reoffend, "a risk substantially lower than in any Kansas case finding sufficient evidence to support a commitment as a sexual predator." Also,

Palmer points out that Dr. Flesher did not conduct an actuarial analysis and may have told Palmer that the lack of actuarial data in his recommendation to the multidisciplinary committee indicating he was at risk to reoffend would likely result in him not being evaluated at Larned. The remainder of Palmer's argument asks this court to reweigh the experts' testimony.

The jury, having unanimously concluded beyond a reasonable doubt that Palmer is a sexually violent predator, obviously considered Dr. Flesher's testimony more persuasive that Palmer is likely to reoffend. Hence, the dispositive question is whether Dr. Flesher's testimony sufficiently established the third element of the sexually violent predator definition. At the outset, we must say the Act "does not require the State to prove that an offender *will* reoffend." (Emphasis added.) *Williams*, 292 Kan. at 109; see *Crane*, 534 U.S. at 412 (where the court held that "[i]nsistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities").

It is true that Dr. Flesher's basis for his opinion did not include an actuarial analysis. According to Dr. Flesher, the Department of Corrections does not use the MnSOST-R because it has been highly criticized, and the Static-99 would not be appropriate for a noncontact offense. Dr. Flesher clarified that if he told Palmer there was no need for him to go to Larned, it was because the multidisciplinary committee would probably not forward Palmer's noncontact case to the Attorney General's office due to Dr. Flesher's inability to administer the Static-99 to him. Dr. Flesher conceded there were other actuarial instruments available and a clinical assessment without actuarial data is less accurate. According to Dr. Shannon, research has shown that the combination of structured clinical judgment and the use of actuarials are more accurate than either method alone. Dr. Shannon clarified that Palmer's level 1 MnSOST-R score only meant that 10 to 12 percent of the thousand-plus convicted sex offenders with the same score as Palmer had reoffended within 6 years, not that Palmer himself had a 10 to 12 percent chance of reoffending within 6 years. However, Dr. Shannon acknowledged that the MnSOST-R underestimates the chances of recidivism and does not look at an individual

beyond 6 years. Our Supreme Court in *Williams* addressed the State's use of actuarial tests and noted:

"[T]here is no authority supporting a requirement that the State use a particular method of proof or a particular diagnostic tool, such as an actuarial test. Nor is there support for suggesting that if an actuarial test is used, a particular percentage or category of risk must be shown on the actuarial risk assessment test before an offender may be characterized as a sexually violent predator." 292 Kan. at 109.

Furthermore,

"low scores on the actuarial tests weigh against finding the State has met its burden. However, other evidence could convince a rational factfinder that the State has met its burden beyond a reasonable doubt, especially when . . . both experts based their opinions on factors other than the tests." 292 Kan. at 111.

Given Dr. Flesher's reason for not using the MnSOST-R and Dr. Shannon's acknowledgment of its shortcomings, a jury could have placed little or no weight on Palmer's MnSOST-R score and could have relied on other aspects of the experts' opinions.

In addition to the facts surrounding Palmer's underlying conviction, Dr. Flesher based his opinion that Palmer is at a high risk to reoffend and have contact with a child sometime in the future "on the presence of risk factors identified in the literature as being related to the offending." These risk factors included Palmer's fantasies, urges, and desires regarding children for 7 years, his parole revocation and noncompliance with a sex offender treatment program, and the presence of a personality disorder. Dr. Flesher, when assessing Palmer's risk of reoffending, testified that Palmer's story about wanting to molest his niece "indicates to me a concrete behavior that was in furtherance of sexual fantasies that had it not been intervened by an external source, then it may have been completed." In other words, but for the interruption, Palmer would have acted in accordance with his urges.

Without reweighing the experts' testimony, the factors Dr. Flesher used to base his opinion, when viewed in the light most favorable to the State, presented sufficient evidence to satisfy the third element—that Palmer is likely to reoffend.

We turn to the fourth element—whether Palmer has serious difficulty controlling his dangerous behavior. Palmer simply asks

this court to reweigh the evidence, which is beyond the purview of this court. See *Williams*, 292 Kan. at 104. We note both experts diagnosed Palmer as qualifying for the mental abnormality of pedophilia under the standards of the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders. The DSM-IV describes pedophilia as "a mental abnormality that critically involves what a lay person might describe as a lack of control." *Crane*, 534 U.S. at 414. Dr. Flesher testified that pedophilia is a persistent disorder that is "most popularly thought of [in the scientific literature] as being a life-long condition." Also, Dr. Flesher told the jury "physiologically-measured deviant sexual arousal . . . is the strongest single factor related to recidivism."

Palmer's admissions and actions support the jury's findings regarding the fourth element. When asked during cross-examination if "[i]t's safe for you to go and be with a little girl," Palmer responded, "As long as I'm not alone, yes." Palmer told Pickens that the reason why he had not acted on his urges of "kidnapping, fondling and raping young girls," particularly the 11-year-old girl he knew from the neighborhood where he lived in Rhode Island, was that "he didn't have the opportunity or hadn't had a chance to get a hold of her." While on parole in Olathe, Palmer would drive by Mill Creek community pool to "look at the girls," and frequent McDonalds because "there would be a good chance of seeing children there." When initially contacted by Detective Thompson, Palmer consented to a search of his pickup. Detective Thompson told the jury that the two stuffed animals and Pez candy dispenser that he found in Palmer's pickup caught his attention because they were items that would be attractive to children. It was up to the jury to determine how much weight to place on any testimony regarding the effectiveness of Palmer's current and past medications to reduce his fantasies and prevent him from acting on his admitted behavior.

After considering the testimony offered by Dr. Shannon and Dr. Flesher, the numerous witnesses, and Palmer, a reasonable factfinder could have found Palmer to be a sexually violent predator beyond a reasonable doubt.

*The images were properly admitted.*

In his final issue, Palmer asserts that the trial court abused its discretion by allowing the State to use the child pornography images he admittedly possessed on his computer in his underlying conviction for sexual exploitation of a child. Palmer argues the images were not relevant to prove the required elements in a sexually violent predator proceeding and were unduly prejudicial.

A brief review of some fundamental points of law is helpful at this point. When reviewing a trial court's decision concerning the admission of evidence, an appellate court first determines whether the evidence is relevant. All relevant evidence is admissible unless statutorily prohibited. K.S.A. 60-407(f); see *State v. Riojas*, 288 Kan. 379, 382-83, 204 P.3d 578 (2009). Relevant evidence has both a probative and a materiality element. *State v. Houston*, 289 Kan. 252, 261-62, 213 P.3d 728 (2009). Evidence is probative if it has " 'any tendency in reason to prove' " a fact. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008) (quoting K.S.A. 60-401[b]). Whether evidence has probative value is reviewed for abuse of discretion. In determining whether the evidence is "material," the analysis focuses on whether the fact to be proved is " 'significant under the substantive law of the case and properly at issue.' " [Citations omitted.]" *Reid*, 286 Kan. at 505. Appellate review for materiality is de novo. *State v. Wells*, 289 Kan. 1219, 1226, 221 P.3d 561 (2009). However, even if evidence is both probative and material, the trial court must still determine whether the probative value of the evidence outweighs its potential for producing undue prejudice. Appellate courts review this determination for abuse of discretion. *Wells*, 289 Kan. at 1227.

If the trial court erroneously admits evidence at trial, the appellate court must determine whether the error was harmless. Reversal is required only where an erroneous admission of evidence was of such a nature as to influence the outcome of the trial and deny substantial justice. *State v. Ransom*, 289 Kan. 373, 388, 212 P.3d 203 (2009). Thus, the appellate court must determine if there is a reasonable possibility that the evidence admitted affected substantial rights, meaning whether the error affected the outcome of

the trial. See *State v. Ward*, 292 Kan. 541, Syl. ¶¶ 5-6, 256 P.3d 801 (2011). In making such a determination, each case must be analyzed in the light of the record as a whole. *State v. Garcia*, 282 Kan. 252, 270, 144 P.3d 684 (2006).

In Kansas, the trial court has broad discretion regarding the admission of photographs. *State v. Cordray*, 277 Kan. 43, 59, 82 P.3d 503 (2004). In determining whether photographs should be admitted, a trial judge must determine whether they are relevant and whether a proper foundation has been laid. *State v. Kirby*, 272 Kan. 1170, 1186, 39 P.3d 1 (2002). "Demonstrative photographs that serve to better illustrate a witness' testimony to the jury are admissible when the photographs themselves, if viewed in a vacuum, would be otherwise objectionable." *State v. Miller*, 284 Kan. 682, 696, 163 P.3d 267 (2007).

*The nature of this judicial proceeding requires this type of evidence of the crime.*

To establish an individual is a sexually violent predator, the State is required to show convictions or charges relating to a sexually violent offense. *Hay*, 263 Kan. at 836-37. Neither K.S.A. 60-455 nor the cases that interpret it govern the admission of prior crimes evidence in sexually violent predator commitment proceedings. See K.S.A. 59-29a01 *et seq.*; *Miller*, 289 Kan. at 226-27. The Act requires evidence of a sex offender's propensity to commit sexually violent acts in the future. Consequently, the nature of the sexually violent predator inquiry virtually guarantees the wide-ranging admissibility of evidence concerning the defendant's past crimes and transgressions. *Miller*, 289 Kan. at 227. Our Supreme Court has also determined that even uncharged prior conduct is material and admissible in a trial to determine if an individual is a sexually violent predator. See *Hay*, 263 Kan. at 838.

Here, when the State wanted to publish all of the child pornography images seized from Palmer's computer, the trial court considered Palmer's objection outside the presence of the jury. Palmer's counsel argued the images were inflammatory, prejudicial, and not relevant given that there was already testimony that Palmer had possessed nude images of children. After taking the matter

under advisement, the trial court acknowledged the prejudicial and unduly repetitious nature of showing the jury the entire packet of child pornography images from Palmer's underlying conviction by limiting the number of images published and redacting the children's faces. The trial court explained to the jury that the published images were a "sampling" of State's Exhibit No. 9, which contained "a lot more photographs," and instructed the jurors to either look at them or pass them on.

Later, the trial court explained its intent of balancing the highly prejudicial nature of the images from Palmer's prior conviction versus their probative nature. The trial judge stated:

"It was graphic, it was very prejudicial. But what could the State—beyond just allowing the conviction itself, I do believe the State is allowed and entitled to show the jur[ors] the facts behind that conviction that would assist them in determining the nature of the crime, what it was, beyond simply telling them what the name is and what types of materials [Palmer] had in his possession since that's a crime. And they're asked to determine *whether he would likely do that again*.

"And I think it was appropriate to show those to the jury . . . and I think the evidence was probative and, while prejudicial, admissible." (Emphasis added.)

Palmer's child pornography images were relevant to a pattern of behavior and appropriate in aiding the jury to make its determination whether Palmer would commit a similar offense again. " '[E]vidence of prior conduct [is] material to the question of likelihood that the respondent would engage in repeat conduct as well as to the element of conviction of prior conduct.' [Citation omitted.]" *In re Care & Treatment of Colt*, 289 Kan. 234, 238, 211 P.3d 797 (2009). The images were also relevant in support of Dr. Flesher's opinion of Palmer's diagnosis. Dr. Flesher testified he considered the facts surrounding Palmer's underlying conviction in his risk assessment of Palmer, which concluded that there was a high risk Palmer would possess child pornography again or have a contact offense against a child. When evidence of a defendant's criminal history is shown to be significant to a clinical diagnosis that supports an expert's ultimate opinion in a sexually violent predator case, the evidence is relevant. *In re Care & Treatment of Colt*, 39 Kan. App. 2d 643, 651, 183 P.3d 4 (2008), *aff'd* 289 Kan. at 239-40.

Finally, Palmer admitted that he returned to viewing similar images in order to have his parole revoked. The jury could consider this evidence when considering whether he has serious difficulty in controlling this behavior.

Affirmed.