No. 120,309

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of
the Care and Treatment of
MONTELL W. JONES.

SYLLABUS BY THE COURT

1.

In proceedings under the Kansas Sexually Violent Predator Act, the Kansas Rules of Civil Procedure apply unless the Sexually Violent Predator Act specifically provides otherwise.

2.

When a motion to dismiss relies on facts not found in the pleadings, the court must treat it as a motion for summary judgment.

3.

A motion for summary judgment may not be granted when there is admissible evidence in the record supporting each element of the claim of the party opposing summary judgment.

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Opinion filed February 7, 2020. Reversed and remanded with directions.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Christopher Cuevas*, of Kansas City, for appellee.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

LEBEN, J.: Our rules of civil procedure let a party seek summary judgment—rather than having to go through a trial—when the other side's evidence doesn't prove a key part of their claim. But summary judgment isn't a substitute for a trial; when there's some evidence to support the claim, even if it's weak, we decide the case by hearing both sides' evidence at trial, not by summary judgment.

The case before us has some procedural wrinkles to it, but the principle we've just discussed resolves it. The State sought to have Montell Jones committed for treatment as a sexually violent predator and presented an expert witness whose testimony provided probable cause to believe Jones met the required criteria. The court then ordered another evaluation at a state hospital—and a different expert, chosen by the state hospital, concluded Jones was *not* a sexually violent predator.

The court then directed that the second expert be brought to testify. And after hearing from him, the court ended the case since this second expert—chosen for this purpose by the State—had found Jones wasn't a sexually violent predator.

But that's not how this process—or summary judgment—works. The State is represented here by a prosecutor, not by an expert chosen by a state hospital. And the State had presented an expert whose testimony supported the State's claim. The district court erred by granting summary judgment. We therefore reverse its judgment and send the case back for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Jones was convicted in 2005 of one count of rape after he had sex with a 12-year-old girl. Jones, 18 at the time of the offense, received a 10-year prison sentence.

As he was about to complete that sentence, the State filed a petition to commit him at the end of his sentence under the Sexually Violent Predator Act. The action was filed on behalf of the State by an assistant attorney general, and the petition she filed asked the court to determine whether there was probable cause to believe Jones was a sexually violent predator subject to civil commitment.

The State's petition is authorized by the Kansas Sexually Violent Predator Act. The Act lets the State seek a court order when an inmate convicted of a sexually violent offense is about to be released. If the State shows that the inmate meets criteria for classification as a sexually violent predator, the district court can order that the person remain confined to protect the public while the person receives treatment for any underlying mental disorder. To be subject to civil commitment under the Act, the person must (1) have been convicted or charged with a listed sexually violent offense and (2) suffer from some mental abnormality or personality disorder (3) that "makes the person likely to engage in repeat acts of sexual violence and [have] serious difficulty in controlling such person's dangerous behavior." K.S.A. 2018 Supp. 59-29a02(a).

The petition against Jones alleged that he had been convicted of a sexually violent offense and that he suffered from a mental abnormality or personality disorder that made him likely to engage in repeat acts of sexual violence. The petition designated Dr. Bradford Sutherland, a clinical psychologist, as "a State expert" in the case. Along with the petition, the State filed a 15-page report from Dr. Sutherland that recommended Jones' civil commitment because his "risk [of committing a new sexual offense] cannot reasonably be managed in the community."

The district court found that the petition alleged that Jones met the statutory criteria for a sexually violent predator subject to civil commitment. The court ordered that Jones be kept in custody on his release from prison and brought to the county jail. The

3

court also appointed an attorney to represent Jones; a different attorney, not appointed by the court, later entered an appearance and took over Jones' representation.

Once a judge has determined that the petition shows that probable cause exists to believe that the defendant is a sexually violent predator, Kansas law requires that a hearing be held at which the defendant may "contest probable cause." K.S.A. 2018 Supp. 59-29a05(b). The probable-cause hearing must take place "[w]ithin 72 hours after a person is taken into custody . . . or as soon as reasonably practicable or agreed upon by the parties." K.S.A. 2018 Supp. 59-29a05(b). In Jones' case, the court held the probable-cause hearing about two months after the petition was filed. Dr. Sutherland gave testimony consistent with his report, and the court found that the State had shown probable cause to believe that Jones was a sexually violent predator under the Act.

The next step is that the court orders another mental-health examination of the defendant. That may be done by any professionally qualified person chosen by the court, K.S.A. 2018 Supp. 59-29a05(d), but is usually done at a state hospital. Often, perhaps because of the cases selected for sexually violent predator proceedings, the hospital psychologist or psychiatrist agrees that the defendant meets sexually violent predator criteria. After the defendant gets that report, his attorney usually retains an expert witness who will give contrary testimony, and the case is tried either to a judge or a jury.

In Jones' case, though, an expert hired by the Larned State Hospital, Dr. Mitchell Flesher, concluded that Jones did *not* meet criteria for designation as a sexually violent predator. Based on Flesher's conclusion, Jones moved to dismiss the case.

Faced with an unusual situation, the district court decided to hear from Dr. Flesher. Although Dr. Flesher is in private practice, not a state employee, he often does evaluations like this one for Larned State Hospital under a contract with the State. The district court said that Dr. Flesher had been chosen by the State and found that

4

significant: "[I]f the State's own evaluator is recommending that he's not a predator, then the next step would be release." The court heard testimony from Dr. Flesher, ordered Jones released, and dismissed the case. The State then appealed to our court.

ANALYSIS

The State first argues that the Kansas Sexually Violent Predator Act sets out several specific procedural steps but makes no provision for summary-judgment motions. The State then relies on our court's statements in *In re Care & Treatment of Palmer*, 46 Kan. App. 2d 805, 265 P.3d 565 (2011), that "[i]f there is to be a motion to dismiss filed, it must be filed before the court's determination of probable cause," 46 Kan. App. 2d at 811, and that "[s]ummary judgment is not available . . . after a probable cause finding." 46 Kan. App. 2d 805, Syl. ¶ 2.

If those statements from *Palmer* are correct—that motions to dismiss or for summary judgment may not be considered after a probable-cause finding—then the district court here shouldn't have granted Jones' motion. We therefore begin our discussion with an explanation of why we do not rely on those statements from *Palmer*.

*Our Prior Decision in* Palmer

The *Palmer* case arose in circumstances quite similar to Jones' case. The only significant difference was that in *Palmer*, the defendant "waived his right to a probable cause hearing," which we found to be an agreement or stipulation that "there was sufficient evidence to bind him over for trial." 46 Kan. App. 2d at 811. In *Palmer*, as here, when the defendant was sent for an evaluation at Larned State Hospital, the evaluator concluded that Palmer didn't meet the requirements for classification as a sexually violent offender. And in *Palmer*, as here, the defendant then moved to dismiss the cases based on that evaluation. The cases differ in that the *Palmer* district court had

5

ruled that a motion to dismiss could not be made after the probable-cause finding. So the case had proceeded to a trial, and the jury had found Palmer was a sexually violent offender. 46 Kan. App. 2d at 807-08. On appeal, Palmer argued that his motion to dismiss should have been granted.

Our court gave two reasons why the defendant could not get his desired pretrial ruling that he did not qualify as a sexually violent offender. First, we recognized that the State and the defendant each had experts and that those experts would provide conflicting testimony. Although Palmer had waived his probable-cause hearing, the State had expert testimony available to support its position that Palmer was a sexually violent predator. This made the situation inappropriate for summary judgment:

> "Obviously, to rule upon such a motion, the trial court would necessarily have to weigh evidence, which a court cannot do when ruling on a motion for summary judgment. We hold the trial court correctly denied the motion and submitted the case to the jury." 46 Kan. App. 2d at 806.

Second, we concluded that motions to dismiss and motions for summary judgment weren't contemplated by the Sexually Violent Predator Act once the district court had found probable cause for a civil commitment. We reasoned that because the Act had a series of procedural steps and time deadlines triggered by that probable-cause finding, motion practice wasn't provided for. 46 Kan. App. 2d at 811-13.

In retrospect, our first reason would have been sufficient to resolve the *Palmer* case. (It also is sufficient to resolve Jones' case, as we will discuss in the next section.) As for the second reason, it has been undercut by a statutory change, later cases, and arguments not made by the parties in *Palmer*:

- In a statutory change after *Palmer*, the Legislature changed the Kansas Rules of Evidence to mirror federal standards for challenging expert-opinion testimony. L.

6

2014, ch. 84, § 2 (amending K.S.A. 60-456). That has broadened the ability for parties to challenge the reliability of scientific evidence before trial. See Malone, *Daubert in Kansas: Prompting a Fresh Look at the Admissibility of Scientific Evidence*, 84 J.K.B.A 22 (October 2015). Such a challenge was made in *In re Care & Treatment of Cone*, 309 Kan. 321, 435 P.3d 45 (2019), a civil-commitment proceeding under the Sexually Violent Predator Act. Cone moved to exclude tests used by the State's experts as unreliable. 309 Kan. at 322, 325-32; see also *In re Care & Treatment of Cone*, No. 116,801, 2017 WL 3668891, at *1 (Kan. App. 2017) (unpublished opinion), *aff'd* 309 Kan. 321. The validity of the tests was contested at an evidentiary hearing; the trial judge ruled the tests were reliable and admissible. Had the district court sustained Cone's motion and found the test results inadmissible, a motion for summary judgment might have been appropriate to determine whether the State had enough other evidence to meet its burden of proof at trial.

- In a case decided after *Palmer*, *In re Care & Treatment of Easterberg*, 309 Kan. 490, 437 P.3d 964 (2019), several proceedings—including a direct habeas corpus proceeding before the Kansas Supreme Court—took place after the probable-cause finding but before trial. Our Supreme Court allowed the direct habeas corpus proceeding before it so that the defendant could challenge whether the defendant's conviction qualified for inclusion under the Sexually Violent Predator Act. The court held that Easterberg should be allowed to contest whether the conviction qualified—and thus whether he was subject to civil commitment at all—before trial. 309 Kan. at 497. The court determined that a factual issue had to be resolved before that question could be answered and sent the case back for further pretrial proceedings in the district court. Both the separate habeas proceeding before our Supreme Court and the additional hearing in the district court took place after the probable-cause determination had been made. Allowing these proceedings seems contrary to the reasoning in *Palmer*; the

result in *Easterberg* suggests that there are no significant limits on what defenses still may be considered after the probable-cause determination.

- Neither party in the *Palmer* appeal noted a possible defense motion to dismiss the civil-commitment proceeding for violation of the defendant's right to a speedy trial. The defendant has speedy-trial rights in those proceedings, see *In re Care & Treatment of Ellison*, 305 Kan. 519, Syl. ¶¶ 1-2, 385 P.3d 15 (2016), and might not know at the time of the probable-cause hearing whether the State will cause later delays that would violate those rights. The grounds for a motion to dismiss for failure to provide a speedy trial usually involve dates found in the court's own records, so the issue would be properly raised by a motion to dismiss. Again, that motion couldn't be raised under the *Palmer* reasoning.

- Nor did the parties in *Palmer* note that a defendant in a civil-commitment case might have a valid legal defense that should keep the case from proceeding. For example, if the State lost at trial in an attempted civil commitment and then brought a new case against the same defendant, the new claim would be barred by the legal doctrine of res judicata unless circumstances had materially changed. *In re Care & Treatment of Sigler*, 310 Kan. 688, 700-01, 448 P.3d 368 (2019). A res judicata defense then would be appropriately raised by a motion to dismiss or, if factual matters were involved, a motion for summary judgment. We can think of no reason why that motion should be out of order even if brought after the probable-cause hearing. And that circumstance could easily happen. The probable-cause hearing must take place within 72 hours after a person is taken into custody, and the defendant's attorney might be appointed only shortly before the probable-cause hearing. As an example, a motion to dismiss on res judicata grounds was made after the probable-cause finding had been made in *In re Care & Treatment of Sporn*, 289 Kan. 681, 682, 215 P.3d 615 (2009). The motion was granted, and the dismissal was affirmed on appeal. 289 Kan. at 689.

8

All of this suggests that making the sorts of motions usually allowed in civil cases should also be allowed in civil-commitment proceedings under the Sexually Violent Predator Act. Consistent with that suggestion, the Act itself says that the Kansas Rules of Civil Procedure (which are set out in Chapter 60 of the Kansas Statutes Annotated) apply to its proceedings. K.S.A. 2018 Supp. 59-29a04(g) says that "proceedings" under the Act "are civil in nature" and "shall follow the procedures set forth in chapter 60 of the Kansas Statutes Annotated . . . except as expressly provided elsewhere in the Kansas sexually violent predator act." Of course, civil-procedure rules provide for motions to dismiss and motions for summary judgment. See K.S.A. 2018 Supp. 60-212; K.S.A. 2018 Supp. 60-256. And no provision in the Sexually Violent Predator Act expressly provides that those motions not be allowed.

Based on these considerations, we conclude that civil-motion practice is available in cases under the Act.

*Our Analysis of Jones' Case*

Once we apply civil-procedure rules to Jones' motion to dismiss, we can quickly resolve this appeal. Although Jones labeled the motion as one to dismiss, the motion relied on facts not in the pleadings—specifically the expert opinion of Dr. Flesher. When a motion to dismiss relies on facts not found in the pleadings, we treat it as a motion for summary judgment. K.S.A. 2018 Supp. 60-212(d); *Rhoten v. Dickson*, 290 Kan. 92, Syl. ¶ 1, 223 P.3d 786 (2010).

A motion for summary judgment asks the court to decide the case without holding a trial because none of the relevant facts are in dispute and, based on those facts, the law clearly dictates who should win. See K.S.A. 2018 Supp. 60-256; Black's Law Dictionary 1218 (11th ed. 2019). In determining whether summary judgment is proper, the court

must resolve all facts and inferences in favor of the party opposing summary judgment—here, the State. See *Deal v. Bowman*, 286 Kan. 853, Syl. ¶ 1, 188 P.3d 941 (2008).

Under those standards, summary judgment was improper. The State had expert testimony from Dr. Sutherland supporting its claim that Jones is a sexually violent predator. To prove that claim, the State must show that:

- Jones had been convicted of a sexually violent offense;
- Jones suffers from a mental abnormality or personality disorder that makes him likely to engage in repeat acts of sexual violence; and
- Jones' mental abnormality or personality disorder makes it seriously difficult for him to control his dangerous behavior. See PIK Civ. 4th 130.20 (2008 Supp.).

No one disputes that Jones had been convicted of a sexually violent offense. And Dr. Sutherland had testified in support of each of the other required elements of that claim:

- Dr. Sutherland said that Jones had an "exhibitionist disorder" in which he became "aroused by exposing genitals to physically mature individuals," that he had an "antisocial personality disorder" of the "aggressive, sadistic type" with "psychopathy."
- After explaining the clinical interview he had done and the testing instruments he had used, Dr. Sutherland said that in his opinion, "Mr. Jones will have serious difficulty controlling his behavior outside of a structured environment." Dr. Sutherland said that Jones had a significant hostility toward women and that "there is a good likelihood that he would act out sexually against any female who rejected him." He also said that Jones "derives sexual satisfaction by inflicting emotional distress on women." And he testified that Jones' scores on one of the testing measures Dr. Sutherland used suggested a 45% likelihood of violent recidivism within 5 years and a 69% likelihood of violent recidivism within 12 years.

10

While Dr. Flesher had a different view, that doesn't make summary judgment appropriate—it merely creates a factual dispute for trial. We simply have a disagreement between experts, the sort of thing that usually gets resolved at trial. Absent a challenge to an expert's qualifications or to the validity of the expert's opinion—challenges not made here—summary judgment is not available when one expert's testimony supports each element of a party's claim.

So the grant of summary judgment was improper. After all, when the court heard Dr. Sutherland's testimony at the probable-cause hearing, the court found that testimony to support each element of the State's claim. That evidence has not gone away.

The district court placed significance on the way Dr. Flesher had been chosen. The court had sent Jones to a state hospital for further evaluation, and the state hospital had contracted with Dr. Flesher to do that evaluation. Because Dr. Flesher was chosen by a state entity, the court essentially made Dr. Flesher's conclusions binding on the State in its role as a party in this case. Nothing in the Kansas Rules of Civil Procedure or in the Sexually Violent Predator Act supported that action.

Instead, the Sexually Violent Predator Act authorizes the Kansas Attorney General to represent the State in these proceedings. See K.S.A. 2018 Supp. 59-29a04(a). The petition was filed by an assistant attorney general, and that attorney—not a person under contract with the state hospital to do an evaluation—represents the State in this proceeding. As in other civil cases, a party *may* admit facts in response to a request for admissions. K.S.A. 2018 Supp. 60-236. But that hasn't happened here, and the State isn't bound to accept the opinion of Dr. Flesher.

In sum, Jones' motion to dismiss relied on factual evidence not found in the pleadings, so the court should have treated it as a motion for summary judgment. Because

11

there was conflicting evidence on the central issues of the case, summary judgment should have been denied.

We therefore reverse the district court's judgment and remand the case for further proceedings.